UNITED STATES of America,
Appellee,

v.

Charles Leo NICHOLS, Appellant.

No. 19669.

United States Court of Appeals,
Eighth Circuit.

Feb. 6, 1970.

Bernard Passer and Herman Epstein, Kansas City, Mo., on brief for appellant.

Calvin K. Hamilton, U. S. Atty., Kansas City, Mo., on brief for appellee.

Before VAN OOSTERHOUT, Chief Judge and MATTHES and HEANEY, Circuit Judges.

HEANEY, Circuit Judge.

The defendant, Charles Leo Nichols, was charged, in a one count indictment, with traveling interstate "with intent to \* \* \* facilitate the \* \* \* carrying on of an unlawful activity \* \* \*" in violation of § 1952, Title 18, U.S.C.[1] The defendant waived trial by jury and, on January 3, 1969, was found guilty and sentenced to one year and one day by Judge Richard M. Duncan, United States District Judge for the Western District of Missouri. From that judgment, the defendant brings this appeal.

The evidence produced at trial was not in controversy and consisted, in large part, of previous admissions of the defendant to various public officials and law enforcement officers. The defendant did not introduce any evidence on his own behalf. The evidence tended to establish the following facts.

The defendant was involved in the operation of policy wheels in the Kansas City area since the early 1920's. During the 1960's, the defendant's operations encountered problems due to the passage of federal anti-racketeering legislation[2] and to occasional crackdowns by local officials. These measures resulted in the temporary shutdown of the defendant's policy operations on at least two occasions and a reduced level of activity at other times. In May, 1967, the defendant again commenced the operation of a policy wheel in Kansas City, Kansas.

During the period from 1965 to September 29, 1967, the defendant approached several public officials in attempts to aid his operation. After being denied permission to operate a policy wheel from officials in Kansas City, Kansas and Leavenworth, Kansas,[3] the defendant contacted Detective Washington, a member of the vice squad of the Kansas City, Kansas, Police Department. The initial contact was made by telephone on June 30, 1967, in Kansas City, Kansas. The defendant informed Detective Washington that he was operating a policy wheel in Kansas City, Kansas. He stated that he had been losing money the last two years because of pressure from local officials and that he hoped to expand his operation and re-

---

1. Section 1952, in pertinent part, states:
   "(a) Whoever travels in interstate or foreign commerce or uses any facility in interstate or foreign commerce, including the mail, with intent to—
      \*    \*    \*    \*    \*
   "(3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity, "and thereafter performs or attempts to perform any of the acts specified in subparagraphs (1), (2) and (3), shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

"(b) As used in this section 'unlawful activity' means (1) any business enterprise involving gambling, liquor on which the Federal excise tax has not been paid, narcotics, or prostitution offenses in violation of the laws of the State in which they are committed or of the United States \* \* \*."

2. 18 U.S.C. §§ 1952, 1953 (1965).

3. These officials were the Mayor of Kansas City, Kansas, the Chief of Police of Kansas City, Kansas, and the Sheriff in Leavenworth, Kansas.

coup his losses now because he had heard the pressure was off. The defendant offered Washington $100.00 per month to inform him when the "heat was on" or if his policy writers were in danger of arrest from local law enforcement agencies. Detective Washington subsequently informed the Chief of Police of the meeting and was instructed to relay the information to the FBI. Washington had no subsequent contact with the defendant and did not receive or accept any money from him.

On September 26, 1967, the defendant telephoned Lieutenant John J. Donnelly, then head of the Vice Unit of the Kansas City, Kansas, Police Department. A meeting was arranged for the same day. At this meeting, the defendant informed Donnelly that he wanted to operate his business more freely than he had been able to do and that it would be worth $200 immediately and $300 each month thereafter to Donnelly if he would help him. Donnelly was "not to assign men to follow him, not to interfere by making too many arrests, just to make a periodic arrest here and there to make things look good." Donnelly responded that he didn't think much of the idea, but would consider it. During this meeting, the defendant admitted that he was doing the stamping for his operation at a house on Everett Street in Kansas City, Kansas. The meeting ended with an agreement that Donnelly would call the defendant the next day to arrange another meeting. The following day, Donnelly did contact the defendant, but stated he could not meet with the defendant until Friday, September 29. On Friday, Donnelly again telephoned the defendant and again told the defendant that he did not think much of the defendant's idea. Donnelly stated that he was busy doing some work around the house and then listed a number of places he had to go that day. The defendant interrupted Donnelly at this point and suggested that they met at the Old Westport Shopping Center in

Kansas City, Missouri, mentioned by Donnelly. Donnelly agreed to meet the defendant in the parking lot of the shopping center.

Before going to the shopping center, Donnelly went to City Hall to advise the Chief of Police of the meeting, and he also telephoned the local field office of the FBI of this information. Donnelly had kept both the Chief of Police and the FBI agents informed of the defendant's activities from the time of the original phone call.

When the two men met at the shopping center a short time later, Donnelly noticed a roll of currency[4] in the defendant's hand. Before accepting the money, Donnelly asked again what was expected in return. The defendant replied, "Just any little thing to make the operation run a little smoother where I will be free to operate. Just don't assign these men to follow me all the time. I'll expect—I'll appreciate any little thing you do." As soon as Donnelly accepted the money from the defendant, he gave a prearranged signal and agents of the FBI arrested the defendant.

At the trial, the government's position was that this evidence was sufficient to prove that the defendant was operating a policy wheel in Kansas City, Kansas, and that the defendant traveled to Missouri in an effort to facilitate that operation. The government contended that these two facts were sufficient to constitute a violation of § 1952, Title 18, U.S.C.

On appeal, the defendant alleges five separate errors by the trial court as grounds for the reversal of his conviction:

(1) The overruling of the defendant's motion to quash the indictment as being overly vague.

(2) The overruling of the defendant's motion to quash the indictment because the statute on which it was based is unconstitutional.

---

4. It was subsequently established that the roll of currency contained $200 in five and ten dollar bills.

(3) The permitting of the admissions of the defendant into evidence without corroboration.

(4) The finding of a violation of § 1952, Title 18, U.S.C., because there was insufficient evidence to prove that the defendant conducted any unlawful activity as required by that statute.

(5) The failure to find that the defendant had been entrapped.

We have studied each of these points and have determined that each of them is without merit. We consider the contentions seriatim.

## I

The indictment charging the defendant read as follows:

"That on or about the 29th day of September, 1967, in the Western District of Missouri, and the District of Kansas, CHARLES LEO NICHOLS, unlawfully, willfully, and knowingly did travel in interstate commerce from Westwood, State of Kansas, to Kansas City, State of Missouri, with intent to * * * facilitate the * * * carrying on of an unlawful activity, said unlawful activity being a business enterprise involving gambling, namely, a lottery known as policy gambling and also known as the numbers game, in violation of the laws of the State of Kansas, * * *; and thereafter, said defendant unlawfully, willfully, and knowingly did perform acts to * * * facilitate the * * * carrying on of said unlawful activity, all in violation of Section 1952, Title 18, United States Code."

The defendant argues that this indictment is defective because (1) there is no allegation that the defendant violated a law in the state in which he is being prosecuted, and (2) the activities asserted to have taken place "thereafter" are not specifically described or enumerated.

■ We do not read § 1952, Title 18, U.S.C., as requiring that the gambling occur in the state in which the prosecution is brought. Here, the government alleged that unlawful activity, gambling, was being conducted in Kansas and that the defendant traveled from Kansas to Missouri with the intent to facilitate his Kansas gambling activities. It also alleged that the defendant committed acts which facilitated the unlawful activity. In our view, these allegations are sufficient to bring the activities within the prohibition of § 1952. Section 1952 does not require that the interstate travel be, in itself, a criminal act, nor that the act performed after the travel be itself unlawful, so long as the travel and subsequent act facilitates the carrying on of the unlawful activity. McIntosh v. United States, 385 F.2d 274 (8th Cir. 1967); United States v. Azar, 243 F.Supp. 345 (E.D.Mich.1964).

The site of the prosecution is controlled by § 3237, Title 18, U.S.C., which provides that any offense begun in one District and completed in another District may be prosecuted in either.[5] The cases cited by the defendant, Spinelli v. United States, 382 F.2d 871 (8th Cir. 1967), rev'd on other grounds, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); Grimes v. United States, 379 F.2d 791 (5th Cir. 1967); United States v. Miller, 379 F.2d 483 (7th Cir. 1967), do not attempt to deal with the issue raised here.

■■ The indictment is not insufficient because of its failure to specify the acts performed after the interstate travel or to state where those acts occurred. In Spinelli v. United States, su-

5. Section 3237 states:

"(a) Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed.

"Any offense involving the use of the mails, or transportation in interstate or foreign commerce, is a continuing offense and, except as otherwise expressly provided by enactment of Congress, may be inquired of and prosecuted in any district from, through, or into which such commerce or mail matter moves."

*pra,* this Court dealt with a similar one count indictment couched in the terms of § 1952. We there stated:

> "An indictment is good if it informs the defendant of the offense with which he is charged with sufficient specificity to enable him to prepare his defense and protects him against future jeopardy. * * * We believe this indictment, framed in the terms of the statute, measures up to that standard. Turf Center, Inc. v. United States, 325 F.2d 793 (9th Cir. 1963); United States v. Teemer, 214 F.Supp. 952 (N.D.West Va.1963)."

Spinelli v. United States, *supra* at 888.

We believe this statement of the law to be of continuing validity. The indictment here meets these necessary standards. Additionally, the specific information which the defendant alleges as essential was in fact provided to him in response to his motion for a Bill of Particulars. The defendant was in no way disadvantaged in his preparation of his case by the indictment.

## II

■ The defendant's contention, that § 1952 is unconstitutionally vague, is without merit. Spinelli v. United States, *supra;* United States v. Zizzo, 338 F.2d 577 (7th Cir. 1964), cert. denied, 381 U.S. 915, 85 S.Ct. 1530, 14 L. Ed.2d 435 (1965); Turf Center, Inc. v. United States, 325 F.2d 793 (9th Cir. 1963); Bass v. United States, 324 F.2d 168 (8th Cir. 1963).

■ Further, the defendant's apparent allegation that the statute is unconstitutional as exceeding the power granted to Congress by the Commerce Clause of the Constitution or as an attempt by the federal government to enforce state laws in violation of the Tenth Amendment is equally invalid. These arguments were specifically rejected in Marshall v. United States, 355 F.2d 999 (9th Cir. 1966).

## III

The defendant next argues that the lower court erred in receiving the extra-judicial admissions of the defendant in evidence without corroboration.

■ Here, there was no corroboration of the defendant's extra-judicial admissions; however, none was needed. The defendant's reliance on Opper v. United States, 348 U.S. 84, 75 S.Ct. 158, 99 L. Ed. 101 (1954), and United States v. Calderon, 348 U.S. 160, 75 S.Ct. 186, 99 L.Ed. 202 (1954), is misplaced. These cases considered admissions of fact which occurred after the crime had been committed, while, here, the defendant's admissions occurred prior to his violation of § 1952 on September 29, 1967. The Supreme Court and the Courts of Appeal have long held that admissions made prior to the crime charged are admissible and sufficient to convict without corroboration. Warszower v. United States, 312 U.S. 342, 348, 61 S.Ct. 603, 85 L.Ed. 876 (1941); Fowler v. United States, 352 F.2d 100, 107 (8th Cir. 1965), cert. denied, 383 U.S. 907, 86 S. Ct. 887, 15 L.Ed.2d 663 (1966); Ogden v. United States, 303 F.2d 724 (9th Cir. 1962), aff'd after remand, 323 F.2d 818 (1963), cert. denied, 376 U.S. 973, 84 S. Ct. 1137, 12 L.Ed.2d 86 (1964); Buford v. United States, 272 F.2d 483 (9th Cir. 1959). The *Opper* decision itself recognized this distinction when it stated:

> "In Warszower v. United States, * * * [citation omitted] * * *, we held that although the only proof of an essential element of making a false statement was admissions to the contrary *prior to the crime charged,* sufficient to convict if found true, such an admission would take the case to the jury. We said such admissions 'contain none of the inherent weaknesses of confessions or admissions after the fact.' We think that an accused's admissions of essential facts or elements of the crime, *subsequent to the crime,* are of the same character as confessions and that corroboration should be required." (Emphasis added.)

Opper v. United States, *supra* at 90, 75 S.Ct. at 163.

The defendant's argument is without merit and is rejected.

## IV

The defendant also contends that the evidence was insufficient to prove that he conducted any unlawful activity as required by the statute. The government argues that it established that the defendant was conducting activity in violation of the laws of Kansas, and alternatively argues that a violation of § 1952 may be found where the defendant was attempting to establish an unlawful activity.

We need not reach the alternative ground suggested by the government since we find that there was sufficient evidence to find that the defendant was engaged in unlawful activities in Kansas.

Section 1952, Title 18, U.S.C., in subsection (b), defines "unlawful activity" as "(1) Any business enterprise involving gambling * * * offenses in violation of the laws of the State in which committed * * *."

In the instant case, it was clearly established that §§ 21–1501 and 21–1502 of the Kansas Statutes Annotated prohibit activities related to the operation of lotteries or policies, or similar gambling schemes.

The defendant's admissions indicated that he had been engaged in policy wheel activities in the State of Kansas almost continuously since the 1920's. In regard to his current activities, the admissions of the defendant provided proof of the following:

(1) That the defendant was operating a policy wheel in Leavenworth, Kansas, at some point between the summer of 1966 and the summer of 1967.

(2) That the defendant had resumed policy wheel operations in Kansas City, Kansas, in May, 1967, after closing his operation in December, 1966.

(3) That the defendant was operating a policy wheel in Kansas City, Kansas, as of June 30, 1967, and that he had four policy writers working for him at that time. He had been losing money for the past two years, but hoped to recoup his losses now that the pressure had lessened.

(4) That the defendant was stamping policy slips in Kansas City, Kansas, as of September 26, and that he wanted Lieutenant Donnelly to help him operate his business more freely than he had been able to do previously.

(5) That the defendant, on September 29, 1967, gave Donnelly $200 and agreed to pay Donnelly $300 per month in return for help in making his operation run a little smoother.

In addition, the defendant argues that even if there was sufficient evidence to find that he was engaged in gambling activities in Kansas City, Kansas, the evidence was not sufficient to prove that his travel to Missouri and meeting with Donnelly was connected with his gambling activities. Such an argument is frivolous. There is no explanation for the defendant's conduct other than he arranged the meeting with Donnelly and paid him $200 as a bribe in order to facilitate his gambling operations in Kansas City, Kansas—the only area in which Donnelly had any control or authority.

## V

Lastly, the defendant argues that even if a violation was shown, his conviction cannot stand because the evidence clearly indicates that he was entrapped. His entrapment argument is bottomed on the premise that government agents instigated and arranged for the creation of the travel in interstate commerce—an essential element of the offense charged.

The only evidence concerning the possibility of entrapment was contained in the testimony of Lieutenant Donnelly. While Donnelly testified that an agent of the FBI had discussed the *possibility* of getting the defendant over to Missouri, the only testimony concerning the actual arrangement of the meeting in Missouri indicated the following:

(1) The defendant had initially contacted Donnelly in regard to enlisting his help.

(2) Donnelly called the defendant at the defendant's request.

(3) The defendant suggested that they meet.

(4) The defendant, not Donnelly, suggested the meeting place.

This evidence does not indicate that the defendant was entrapped by police of-the defendant was entrapped by police officials. Lieutenant Donnelly did not maneuver the defendant into interstate travel. See *e. g.*, United States v. Kros, 296 F.Supp. 972 (E.D.Pa.1969). He did no more than afford the defendant the opportunity for the commission of an offense. Sherman v. United States, 356 U.S. 369, 372, 78 S.Ct. 819, 2 L.Ed.2d 848 (1958); Sorrells v. United States, 287 U.S. 435, 53 S.Ct. 210, 77 L.Ed. 413 (1932); Kibby v. United States, 372 F. 2d 598 (8th Cir. 1967).

The judgment of the lower court is affirmed.