**UNITED STATES of America, Appellee,**

v.

**John Booker ARRADONDO, Appellant.**

No. 73-1185.

United States Court of Appeals, Eighth Circuit.

Submitted June 13, 1973.

Decided Sept. 12, 1973.

As Modified on Denial of Rehearing Oct. 1, 1973.

Ellis Olkon, Olkon & Olkon, Minneapolis, Minn., for appellant.

Ellizabeth Egan, Asst. U. S. Atty., Minneapolis, Minn., for appellee.

Before CLARK,* Associate Justice, HEANEY and BRIGHT, Circuit Judges.

BRIGHT, Circuit Judge.

John Booker Arradondo was convicted, after a trial by jury, of one count of procuring transportation of a woman, Jacqueline Calderon, for the purpose of prostitution in violation of the Mann Act, 18 U.S.C. § 2421, one count of traveling in interstate commerce for the purpose of promoting the practice of prostitution by a woman, Patricia Louise Franklin, in the State of New York, in violation of the Travel Act, 18

*The Honorable Tom C. Clark, Retired Associate Justice of the United States Supreme Court, sitting by designation.

U.S.C. § 1952,[1] and an additional count under the same statute of traveling in interstate commerce for the purpose of facilitating the carrying on of prostitution in New York by two other women, Carolyn Dunham and Theresa Louise Mitchell.[2] District Court Judge Earl R. Larson sentenced Arradondo to concurrent terms of five years on each count. Arradondo brings this timely appeal, and raises the following claims:

(1) That the evidence was insufficient to sustain the convictions;

(2) That he was tried under an invalid indictment;

(3) That there was substantial and fatal variance between the dates of offenses proved and the dates specified in the indictment;

(4) That the failure of the government to furnish transcripts of grand jury testimony prejudiced the defense;

(5) That the trial court erred in its rulings on the admissibility of testimony, and

(6) That the prosecutor was guilty of prejudicial misconduct in making an opening statement which overstated the scope and extent of the evidence later produced by the prosecution.

We have carefully reviewed the record and find the trial free of prejudicial error. Accordingly, we affirm the convictions.

The events giving rise to the prosecution occurred in late 1971, and during the months of January, February, and possibly March of 1972. The prosecution introduced testimony of Nancy Collins, age 20, and Patricia Louise Franklin, age 19, that the defendant recruited them to engage in prostitution under his supervision and protection. Nancy, who had practiced prostitution on her own previously, moved at defendant's request into a house owned by him in Minneapolis and occupied by three other of defendant's "ladies" and their children. She testified to her practice of prostitution and her turning over earnings to defendant.

Patty Franklin testified that she became one of defendant's scarlet women in early 1972, moving into the same house in Minneapolis. There, Carolyn Dunham, a more experienced prostitute, taught the neophyte Franklin a one-week course in the art of harlotry. A short time later, Patty, Carolyn, and Terry (Theresa Louise Mitchell), travelled to New York by airplane with tickets apparently furnished by Arradondo, according to Patty Franklin. These three women plied their trade in New York, but were ultimately found out by New York police. While in New York, they resided at the Park Wald Hotel for a two-week period, and were joined by the defendant who stayed in a separate room at the hotel. Patty Franklin turned over money that she earned through her meretricious traffic to defendant directly or through Carolyn.

In addition, the record discloses that Carolyn Dunham and Theresa Mitchell engaged in prostitution in Boston during November of 1971.

---

1. The Travel Act, 18 U.S.C. § 1952, states in relevant part:

(a) Whoever travels in interstate or foreign commerce * * * with intent to—

* * * * *

(3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity,

and thereafter performs or attempts to perform any of the acts specified in subparagraphs * * * (3), shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

2. In addition, the jury found the defendant guilty on one count of white slavery in inducing Miss Franklin to travel in interstate commerce for the purpose of having her engage in prostitution in violation of 18 U.S.C. § 2422, and on one additional count under 18 U.S.C. § 2421 for transporting Miss Dunham and Miss Mitchell in interstate commerce for purpose of prostitution. Both of these convictions were dismissed prior to sentencing upon motion of the prosecution. The defendant was found not guilty on one additional count of violating the Travel Act for his conduct relating to Jacqueline Calderon.

Jackie Calderon, an admitted prostitute, travelled from Minneapolis to New York in December of 1971, and there engaged in prostitution. While she denied paying her earnings from prostitution to defendant, she did admit giving Arradondo money when he needed it, characterizing the transaction as a loan. Telephone records introduced in evidence disclosed several telephone calls between hotels in New York and Boston, where his ladies were then staying, and defendant's residence and business addresses in Minneapolis. Western Union records disclosed that substantial sums of money had been wired to defendant's Minneapolis address during and prior to the dates mentioned in the indictment. The names of some senders of money were those of appellant's "ladies." The persons named as the recipients included Arradondo and some of his "ladies."

## I.

The testimony adequately established that Arradondo procured women to engage in prostitution as a business and that, in early 1972, he travelled to New York City to supervise Patty Franklin, Theresa Mitchell, and Carolyn Dunham in carrying on prostitution in that state in violation of its laws. Thus the evidence supported the convictions for violations under the Travel Act, 18 U.S.C. § 1952, as it separately relates to Miss Franklin and to Miss Dunham and Miss Mitchell. Since the court sentenced Arradondo to concurrent terms, we need not consider whether the remaining count, relating to the transportation of Jacqueline Calderon to New York for an immoral purpose can be supported by the evidence.[3] The five-year prison term will be sustained by application of the concurrent sentence doctrine. United States v. Whitlock, 442 F.2d 1061, 1063 (8th Cir. 1971).

## II.

■ We find no reason to invalidate the indictment. Although the government earlier began proceedings against the defendant under a two-count indictment alleging only violation of the Travel Act, that indictment contained an obviously erroneous reference in charging Arradondo with causing travel in interstate commerce to New York to carry on unlawful activity, i. e., violation of particular statutes of Minnesota, rather than the laws of New York. The subsequent indictment corrected this error, added Mann Act charges as to all "ladies mentioned," and specified separate charges relating to Arradondo's activity with Patricia Franklin, rather than including her with Dunham and Mitchell as in the first indictment. The basic facts alleged in the second indictment were included in the first, and appellant has demonstrated no prejudice from the issuance of the second indictment. The charge of misconduct leveled by the appellant against the prosecution for obtaining a second indictment seems excessive. Both indictments were returned by the same grand jury. Rule 48(a), F.R.Crim.P. permits dismissal of an indictment by leave of court. Such dismissal is without prejudice. See United States v. Chase, 372 F.2d 453, 463 (4th Cir. 1967); United States v. Becker, 221 F.Supp. 950, 954 (W.D.Mo. 1963) (Oliver, J.); 3 Wright, Federal Practice and Procedure § 811 at 304 (1969). Here, the order of dismissal of the first indictment stated the fact of later reindictment on similar charges.

There is a potential for harassment in dismissal of indictment and reindictment if undertaken *during* trial, and this has been recognized both in F.R.Crim.P. 48(a), and by this court in Woodring v. United States, 311 F.2d 417, 424 (8th Cir. 1963). But that is not the situation here. Thus, this challenge lacks merit.

---

3. The Government introduced weak evidentiary support for the Mann Act charge involving Calderon. Testifying as a govern-ment witness, she denied Arradondo's implication in her travel to New York and her engagement there in acts of prostitution.

## 984

### III.

Appellant argues that a "fatal variance" exists between the date of the offenses specified in the indictment, that date, as pertinent here, being February 8th, and the dates proved at trial.

■ Patricia Franklin could not pinpoint the date on which she, Dunham, and Mitchell travelled to New York, but did testify of her experiences with Arradondo, which she stated had occurred somewhere between December, 1971, when Arradondo solicited her to become one of his ladies, and March of 1972, when she left New York to return to her family. The existence of other evidence, dates of arrest in New York City, telephone calls, and wiring of funds to Minneapolis would place the date of travel quite near February 8, 1972. The record discloses no great variance in the time as alleged and as shown. Here, the fact of interstate travel is important, not the precise date of that travel. In the absence of any showing of prejudice, the variation in dates as alleged and as proved does not constitute reversible error. Jacobs v. United States, 395 F.2d 469, 474 (8th Cir. 1968).

### IV.

■ Appellant claims error because he was denied his motion for a bill of particulars. He also complains that the prosecution did not furnish him with a transcript of testimony of a witness who appeared before the grand jury. The record shows that, although several government witnesses testified before the grand jury, only the testimony of Jacqueline Calderon was recorded. A transcription of her grand jury statements was furnished to the defendant at trial. The testimony of Patricia Franklin, a key government witness, was not recorded, but a copy of her statement to an F.B.I. special agent was furnished to and used in cross-examination by defense counsel. It has been repeatedly held in this circuit that a defendant is not denied due process simply because the grand jury which indicted him made no written record of its proceedings.[4] United States v. Harflinger, 436 F.2d 928

4. But to say that there is no constitutional violation in the failure to record testimony of grand jury witnesses is not necessarily to approve this procedure. The better practice in most circumstances is to have a court reporter present and to record and transcribe the minutes of all proceedings of grand jury which are accusatorial in nature. An amendment of F.R.Crim.P. 6(e) to this effect has been repeatedly recommended by the American Bar Association's Special Committee on Federal Rules of Procedure. 52 F.R.D. 87, 95 (1971); 38 F.R.D. 95, 106 (1965). Professor Wright also recommends such a change. See Wright, Federal Practice and Procedure § 103 at 161 (1969). The United States District Court for the Northern District of Illinois has already adopted a new local rule requiring recording of grand jury testimony. See United States v. Aloisio, 440 F.2d 705, 708 n.2 (7th Cir. 1971). However, the Special Committee on Standards for the Administration of Criminal Justice of the American Bar Association has been hesitant to recommend automatic recording of grand jury minutes, stating:

It should be noted that, although there are difficult problems involved in the questions of whether grand jury proceedings should always be recorded and, if they are, whether they must be transcribed in all cases, the Advisory Committee believes the conditions under which these problems arise are much too diverse for it to make recommendations as to a standard applicable everywhere. See, e. g., Okl.Stat. tit. 22 § 340 (as amended 1967) (court reporter required to record proceedings); Ohio Rev.Code Ann. § 2929.11 (1953) (at prosecutor's request, transcript for his use only).

A.B.A. Project on Standards for Criminal Justice, Standards Relating to Discovery and Procedure Before Trial (Approved Draft) at 66 (1970).

Several circuits in dicta have expressed disapproval of not recording testimony, see United States v. Cianchetti, 315 F.2d 584, 591 (2d Cir. 1963); Schlinsky v. United States, 379 F.2d 735, 740 (1st Cir. 1967); United States v. Thoresen, 428 F.2d 654, 666 (9th Cir. 1970); United States v. Aloisio, supra, and Judge Pettine of the United States District Court for the District of Rhode Island, after studying the problem, has announced the rule that indictments will henceforth be "vulnerable if grand jury proceedings in obtaining those indictments are

(8th Cir. 1970), cert. denied, 402 U.S. 973, 91 S.Ct. 1660, 29 L.Ed.2d 137 (1971). Further, it is axiomatic that a motion for a bill of particulars is addressed to the sound discretion of the trial judge. United States v. Gray, 464 F.2d 632 (8th Cir. 1972); Pines v. United States, 123 F.2d 825 (8th Cir. 1941). No abuse of discretion is demonstrated here.

### V.

Appellant claims that the trial court committed prejudicial error in admitting into evidence (1) police records listing arrests and convictions for prostitution of three women named in the indictments, (2) 18 money orders sent from Boston and New York City to the defendant's address, and (3) airline tickets for a flight from Minneapolis to New York City on February 8, 1972, for three women. He challenges various other aspects of the conduct of the trial as also being inflammatory, and asserts that "[i]t is clear defendant was denied the right to a fair trial." Upon examination of the record, we cannot agree. The government's case may have been presented in a somewhat convoluted fashion with some of the loose ends never being tied up, but the sorting out process ultimately rests in the hands of the jury.

■ True, some of the evidence admitted was of questionable probative value. The record of arrests of Arradondo's "ladies" did not prove their engagement in prostitution and most probably ought not to have been admitted in evidence. But other evidence, including direct testimony, showed these women to have been practicing prostitutes at relevant times. Thus, we see no prejudice

to defendant in the introduction of this evidence. Moreover, the record reflects a trial fairly conducted in all respects. Accordingly, the admissibility of this questioned evidence does not constitute reversible error.

### VI.

■ Finally, appellant complains that the government made a number of specific allegations of its intended proof in its opening statement and then at trial failed to offer proof to support all of them. The prosecution's opening statement did indicate the thread of the case that it sought to prove, but it was couched in language of intent and not proven fact. The record indicates that the prosecutor exercised good faith in making the questioned comments in the opening statement. Importantly, the government stated: "And what attorneys say is not evidence. The evidence you hear will either be exhibits that are introduced by either side or the testimony of witnesses under oath."

It has been held by the Ninth Circuit that: " * * * a rule that a mistrial must be declared because the expected testimony outlined in the opening statement is never given from the witness stand, and consequently the adversary never has a chance to test its truth by cross-examination, would be a wasteful and mischievous rule." Gladden v. Frazier, 388 F.2d 777, 779 (9th Cir. 1968), aff'd sub nom. Frazier v. Cupp, 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969), quoted with approval in United States v. Wallace, 453 F.2d 420, 422 (8th Cir.), cert. denied, 406 U.S. 961, 92 S.Ct. 2072, 32 L.Ed.2d 348 (1972). We agree. Accordingly, we reject this claim of error.

Affirmed.

---

not transcribed or otherwise equally effectively recorded." United States v. Gramolini, 301 F.Supp. 39, 42 (D.R.I.1969).

We note that failure of prosecutors to record significant testimony before the grand jury serves to thwart the right of the

defendant under a showing of "particularized need" (see Dennis v. United States, 384 U.S. 855, 86 S.Ct. 1840, 16 L.Ed.2d 973 (1966), to obtain grand jury testimony of a trial witness.