UNITED STATES of America, Appellee,

v.

Nick JOHN, Appellant.

UNITED STATES of America, Appellee,

v.

Victor PADRATZIK, etc., Appellant.

UNITED STATES of America, Appellee,

v.

Charles BERNSTEIN, etc., Appellant.

UNITED STATES of America, Appellee,

v.

Steve LEKOMETROS, etc., Appellant.

Nos. 72–1565, 72–1566, 72–1581 and 72–1594.

United States Court of Appeals, Eighth Circuit.

Submitted June 14, 1973.

Decided Jan. 6, 1975.

Rehearing and Rehearing En Banc Denied in No. 72–1565 Jan. 30, 1975.

Application for Stay Denied Feb. 18, 1975.

See 95 S.Ct. 1115.

Irl Baris, Newmark & Baris, St. Louis, Mo., and Merle L. Silverstein, Clayton, Mo., for appellants.

Mervyn Hamburg, Atty., App. Section, Crim. Div., Dept. of Justice, Washington, D. C., for appellee.

Before Mr. Justice CLARK,* HEANEY, Circuit Judge, and SCHATZ, District Judge.**

HEANEY, Circuit Judge.

Victor Padratzik and Charles Bernstein were found guilty of violating 18 U.S.C. § 1952[1] and of a conspiracy to violate the statute. Nick John and Steve Lekometros were found guilty of a conspiracy to violate the same statute. Evidence obtained pursuant to Title III of the Omnibus Crime Control and Safe

---

\* TOM C. CLARK, Associate Justice, Retired, United States Supreme Court, sitting by designation.

\*\* ALBERT G. SCHATZ, District Judge, District of Nebraska, sitting by designation.

1. § 1952. *Interstate and foreign travel or transportation in aid of racketeering enterprises.*

(a) Whoever travels in interstate * * * commerce or uses any facility in interstate * * * commerce, * * * with intent to—

(1) to distribute the proceeds of any unlawful activity; or

\* \* \* \* \* \*

(3) otherwise promote, manage, establish, carry on, or facilitate the promotion, management, establishment, or carrying on, of any unlawful activity,
and thereafter performs or attempts to perform any of the acts specified in subparagraphs (1), (2), and (3), shall be fined not more than $10,000 or imprisoned for not more than five years, or both.

(b) As used in this section "unlawful activity" means (1) any business enterprise involving gambling * * *.

Streets Act of 1968 (18 U.S.C. §§ 2510–2520) was essential to the government's case. Thirteen points of error are assigned on review; each will be discussed separately. We affirm.

## I. THE CONSTITUTIONALITY OF 18 U.S.C. § 1952.

■ Appellants assert, without supporting argument, that 18 U.S.C. § 1952 is violative of the First, Fifth, Sixth and Tenth Amendments to the United States Constitution. This naked assertion of unconstitutionality is insufficient to warrant judicial review. United States v. Phillips, 433 F.2d 1364, 1366 (8th Cir. 1970), cert. denied, 401 U.S. 917, 91 S.Ct. 900, 27 L.Ed.2d 819 (1971). Moreover, we have upheld the constitutionality of the section in prior cases. See, e. g., United States v. Nichols, 421 F.2d 570 (8th Cir. 1970); Spinelli v. United States, 382 F.2d 871 (8th Cir. 1967), rev'd on other grounds, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969); Bass v. United States, 324 F.2d 168 (8th Cir. 1963).

## II. THE CONSTITUTIONALITY OF 18 U.S.C. §§ 2515–2518.

Appellants also attack the constitutionality of §§ 2515–2518 of Title III of the Omnibus Crime Control and Safe Streets Act of 1968. They invite us to reconsider United States v. Cox, 462 F.2d 1293 (8th Cir. 1972), where we found Title III to be constitutional. We decline the invitation.

## III. WHETHER THE GOVERNMENT'S FAILURE TO CORRECTLY IDENTIFY THE OFFICER WHO IN FACT AUTHORIZED APPLICATIONS FOR WIRETAP ORDERS PURSUANT TO 18 U.S.C. § 2518(1)(a) REQUIRES SUPPRESSION OF THE WIRETAP EVIDENCE.

■ This issue was decided adversely to the appellants in United States v. Chavez, 416 U.S. 562, 94 S.Ct. 1849, 40 L.Ed.2d 380 (1974). Here, as in Chavez, the application for the order authorizing the interception of wire communications misidentified the officer authorizing the application in violation of 18 U.S.C. § 2518(1)(a).[2] At trial, it was established, by affidavit, that then Attorney General John Mitchell was the officer who in fact gave the authorization to apply for the order.[3] The Supreme Court in Chavez held that the initial misidentification, although improper, did not render the interceptions conducted under the order unlawful and subject to suppression. It reasoned that § 2518(1)(a) does not play a role in the regulatory scheme of Title III sufficient to justify the remedy of suppression when its provisions are violated. United States v. Chavez, supra, 416 U.S. 578–580, 94 S.Ct. 1857–1858, 40 L.Ed.2d at 394–395. See also United States of America v. Eugene Schaefer, et al., 510 F.2d 1307 (8th Cir. 1974); United States of America v. Steve Thomas, et al., 508 F.2d 1200 (8th Cir. 1974); United States v. Brick, 502 F.2d

---

**2.** § 2518. *Procedure for interception of wire or oral communications.*

(1) Each application for an order authorizing or approving the interception of a wire or oral communication shall be made in writing upon oath or affirmation to a judge of competent jurisdiction and shall state the applicant's authority to make such application. Each application shall include the following information:

(a) the identity of the investigative or law enforcement officer making the application, and the officer authorizing the application[.]

**3.** The affidavit of Attorney General Mitchell read as follows:

I held the office of Attorney General of the United States from January 21, 1969, through March 1, 1972.

On January 8, March 10, April 19, and May 13, 1971, I personally initialed memoranda authorizing applications for interception orders in this case. Copies of these memoranda are attached.

Each memorandum also constituted a notification to the Assistant Attorney General of the Criminal Division that I had performed the discretionary act of authorizing an application to a judge of competent jurisdiction for the specified interception order.

219 (8th Cir. 1974); United States v. Cox, *supra.*

 Appellants request further that the case be remanded for an evidentiary hearing to challenge Mr. Mitchell's sworn statement that the authority to apply for the wiretap order was given before the order issued.[4] We deny the request. We have held that the Supreme Court has approved the procedure followed here. *See* United States v. Brick, *supra,* 502 F.2d at 227 (Bright, J., concurring).[5]

## IV. WHETHER THE POSTPONEMENT OF THE SERVICE OF THE NOTICE AND INVENTORY PURSUANT TO § 2518(8)(d) OF THE ACT REQUIRES SUPPRESSION OF THE WIRETAP EVIDENCE.

During the course of the government's investigation between January 8, 1971 and May 14, 1971, four orders authorizing the interception of wire communications were issued. The investigation terminated with the arrest of the appellants on June 19, 1971. Only the first order, issued January 8, 1971, became subject to the notice and inventory requirements of 18 U.S.C. § 2518(8)(d)[6] before the investigation terminated.[7] In order to preserve the effectiveness of the continuing investigation, the government applied for and received on April 22, 1971 and May 21, 1971, two successive orders of

---

**4.** Title III requires that:

> The Attorney General, or any Assistant Attorney General specially designated by the Attorney General, may authorize an application to a Federal judge of competent jurisdiction for, and such judge may grant in conformity with section 2518 of this chapter an order authorizing or approving the interception of wire or oral communications by the Federal Bureau of Investigation, or a Federal agency having responsibility for the investigation of the offense as to which the application is made * * *
>
> 18 U.S.C. § 2516(1).

**5.** The author agrees with Judge Bright's concurring opinion in United States v. Brick, 502 F.2d 219 (8th Cir. 1974), that an evidentiary hearing would dispel the residual doubts as to the compliance with Title III. Section 2516(1) requires:

> * * * [T]hat the authority * * * be exercised *before* the application is presented to a federal judge. * * * It would ill serve the congressional policy of having the Attorney General or one of his Assistants screening the applications prior to their submission to court to have the screening process occur after the application is made and after investigative officials have already begun to intercept wire or oral communications under a court order predicated on the assumption that proper authorization to apply for intercept authority had been given.

United States v. Giordano, 416 U.S. 505, 523, 94 S.Ct. 1820, 1831, 40 L.Ed.2d 341, 358 n. 12 (1974) (Emphasis included.).

He would go a step further and remand for such a hearing, but a majority of this Court has decided that a remand is unnecessary.

**6.** 18 U.S.C. § 2518(8)(d) reads as follows:

> (d) Within a reasonable time but not later than ninety days after the filing of an application for an order of approval under section 2518(7)(b) which is denied or the termination of the period of an order or extensions thereof, the issuing or denying judge shall cause to be served, on the persons named in the order or the application, and such other parties to intercepted communications as the judge may determine in his discretion that is in the interest of justice, an inventory which shall include notice of—
>
> (1) the fact of the entry of the order or the application;
>
> (2) the date of the entry and the period of authorized, approved or disapproved interception, or the denial of the application; and
>
> (3) the fact that during the period wire or oral communications were or were not intercepted.
>
> The judge, upon the filing of a motion, may in his discretion make available to such person or his counsel for inspection such portions of the intercepted communications, applications and orders as the judge determines to be in the interest of justice. On an ex parte showing of good cause to a judge of competent jurisdiction the serving of the inventory required by this subsection may be postponed.

**7.** Because we find that the orders of postponement conformed to the statutory requirements, it is not necessary to decide whether, in a particular case, the "reasonable time" language of 18 U.S.C. § 2518(8)(d) would require the service of the notice and inventory before the expiration of the outside limit of ninety days.

postponement of the service of the notice and inventory for the first wiretap order. The appellants assign this as error.

■ We emphasize that the inventory requirements were not ignored here. See United States v. Eastman, 465 F.2d 1057 (3rd Cir. 1972). Post-use notice must always be given by the issuing judge. United States v. Wolk, 466 F.2d 1143, 1146 (8th Cir. 1972). The notice here was received by the appellants after their arrest. Issue is taken only with the postponement of the notice and inventory which caused the service to occur more than ninety days after the termination of the first wiretap order.

■ Title III requires that an order of postponement be based upon "good cause." 18 U.S.C. § 2518(8)(d). Here, the postponement was found by the District Court to be necessary for the continued effectiveness of the government's investigation. This reason has been held sufficient to satisfy the "good cause" requirement. United States v. Manfredi, 488 F.2d 588, 602 (2nd Cir. 1973), cert. denied, 417 U.S. 936, 94 S.Ct. 2651, 41 L.Ed.2d 240 (1974); United States v. Lawson, 334 F.Supp. 612, 616 (E.D.Pa. 1971). See American Bar Association Project on Minimum Standards for Criminal Justice, Standards Relating to Electronic Surveillance, "Approved Draft 1971" at 161.

* * * On an ex parte showing of good cause, the serving of the inventory may be, not dispensed with, but postponed. For example, where interception is discontinued at one location, when the subject moves, but is reestablished at the subjects new location,

or the investigation itself is still in progress, even though interception is terminated at any one place, the inventory due at the first location could be postponed until the investigation is complete. * * *

Senate Report No. 1097, 2 U.S.Code Cong. & Admin.News, p. 2194 (1968).

Moreover, we are satisfied, after reviewing the record, that the court below did not err in finding the facts sufficient to support the reason given. At least one of the persons affected by the first wiretap order was also affected by the other wiretap orders. It was probable that notice of the first order would have undermined the effectiveness of the subsequent orders. The completed wiretaps had produced evidence of a large scale gambling operation. Also, the preservation of the integrity of the subsequent orders was likely to result in the continued interception of incriminating communications. The postponement here was not improper.

V. WHETHER THE GOVERNMENT'S EXECUTION OF THE WIRETAP ORDERS DISREGARDED THE MINIMIZATION MANDATE OF § 2518(5) OF THE ACT.

■ Appellants challenge, for the first time, the manner in which the government executed the wiretap orders. They assert that the government's continuous surveillance of the home telephones without regard to whether the persons suspected of illegality were on the premises[8] was violative of the minimization requirements of 18 U.S.C. § 2518(5).[9] The government does not contest the factual assertions; it justifies its procedure thusly:

---

**8.** All four orders authorizing the interception of the conversations conducted on these telephones required the government to proceed in a manner likely to minimize the interception of communications not subject to the order. The appellants challenge the government's procedure because a distinction was made between the surveillance of the home telephones and the surveillance of the pay telephones. In regard to the latter, the government was authorized to intercept the communications only when it was determined, by physical surveillance, that a suspect was using the pay telephone.

None of the home telephones subject to the order authorizing the interception of the conversations were issued to the appellants. In view of our disposition of this issue, it is not necessary to determine whether the appellants have standing to complain.

**9.** 18 U.S.C. § 2518(5) reads as follows:

No order entered under this section may authorize or approve the interception of

\* \* \* A similar condition [to minimize surveillance] placed upon appellants' private lines would have been inappropriate because it would have prevented the agents from conducting a surveillance of pertinent calls actually intended for appellants, and because it would have impaired their rightful task to ascertain the identity of others believed to be involved in the conspiracy and the full extent of the bookmaking scheme.

We are not entirely satisfied with the justification given by the government. It may open the door wider than the Fourth Amendment permits. We do not decide in this case, however, whether the minimization requirements of 18 U.S.C. § 2518(5) have been exceeded because the appellants failed to raise the issue below and such failure precludes review of this Court. Brooks v. United States, 500 F.2d 103, 105 (8th Cir. 1974); 18 U.S.C. § 2518(10)(a). Moreover, because the attendant facts were not fully developed below, review pursuant to our discretionary power to recognize plain error is impossible. *See* United States v. Wright, 466 F.2d 1256, 1259 (2nd Cir. 1972), cert. denied, 410 U.S. 916, 93 S.Ct. 973, 35 L.Ed.2d 279 (1973). Whether the minimization requirements of Title III have been disregarded is a question that can be answered only after a review of the facts and circumstances of each case. What is excessive in one case may be appropriate in another. United States v. Cox, *supra*, 462 F.2d at 1300. *See* United States v. Manfredi, *supra*; United States v. Lanza, 349 F.Supp. 929 (M.D. Fla.1972). We leave to the appropriate occasion review of this question.

## VI. THE GOVERNMENT'S FAILURE TO RECORD THE ENTIRETY OF EACH COMMUNICATION INTERCEPTED.

■ The appellant's second attack on the government's execution of the wiretap orders is also raised for the first time in this Court. They charge that the government violated 18 U.S.C. § 2518(8)(a) which requires, *inter alia*, that the recording of the intercepted communications "shall be done in such a way as will protect the recordings from editing."

The record shows that the government agents listened to the entirety of each communication intercepted but recorded only those parts that "pertained to gambling." "Private coversations" were not recorded. Whether this procedure failed to protect the recordings from editing in violation of the statute is a question we do not here decide. The appellants were aware of the procedure used before trial but did not move for suppression pursuant to 18 U.S.C. § 2518(10)(a), nor do they claim they were denied the opportunity to do so. Neither did they challenge the admission of the recordings on the ground of questionable authenticity. *See* United States of America v. Eugene Wesley Howard, 504 F.2d 1281, 1287 (8th Cir. 1974), United States v. Knohl, 379 F.2d 427 (2nd Cir.), cert. denied, 389 U.S. 973, 88 S.Ct. 472, 19 L.Ed.2d 465 (1967). The failure to raise the issue below forecloses review.

## VII. WHETHER THE COURT ERRED IN PROVIDING THE JURY TYPED TRANSCRIPTS OF THE COMMUNICATIONS INTERCEPTED

any wire or oral communication for any period longer than is necessary to achieve the objective of the authorization, nor in any event longer than thirty days. Extensions of an order may be granted, but only upon application for an extension made in accordance with subsection (1) of this section and the court making the findings required by subsection (3) of this section. The period of extension shall be no longer than the authorizing judge deems necessary to achieve the purposes for which it was

granted and in no event for longer than thirty days. Every order and extension thereof shall contain a provision that the authorization to intercept shall be executed as soon as practicable, shall be conducted in such a way as to minimize the interception of communications not otherwise subject to interception under this chapter, and must terminate upon attainment of the authorized objective, or in any event in thirty days.

WHILE THE TAPES THEREOF WERE BEING PLAYED TO THE JURY.

The trial court provided the jury with a typed transcript of each intercepted recording offered into evidence by the government. The appellants argue that this violated the best evidence rule, the rule against improper emphasis and repetition and the rule against hearsay.

■ The use of typed transcripts as visual aids to the jury in listening to the playback of the recorded communications is a matter within the sound discretion of the trial judge. United States v. Carson, 464 F.2d 424, 437 (2nd Cir.), cert. denied, 409 U.S. 949, 93 S.Ct. 268, 34 L.Ed.2d 219 (1972); Fountain v. United States, 384 F.2d 624, 632 (5th Cir. 1967), cert. denied, Marshall v. United States, 390 U.S. 1005, 88 S.Ct. 1246, 20 L.Ed.2d 105 (1968); United States v. Hall, 342 F.2d 849, 853 (4th Cir.), cert. denied, 382 U.S. 812, 86 S.Ct. 28, 15 L.Ed.2d 60 (1965).

In the exercise of his discretion, the judge below reviewed the transcripts and found that they were prepared with care and accurately reflected the recorded communications. He also determined that the transcripts were necessary to enable the jury to intelligently follow the recorded conversations which contained gambling language unfamiliar to the jurors. Before distributing the transcripts, the court carefully instructed the jury on their limited use. It directed the jury to use the transcripts only as aids in listening to the recordings and to base its verdict upon what was heard and not upon what was read. Further, the jurors were directed to listen carefully to the declarant's manner and emphasis of speech so as to understand the meaning of what was said. Finally, the transcripts were not made available to the jury during its deliberation. We cannot say that this careful and considered use

of the typed transcripts was an abuse of discretion.

## VIII. THE INSTALLATION OF PEN REGISTERS.

■ In conjunction with each order authorizing the interception of wire communications, the District Court issued an order authorizing the installation of a pen register on the telephones involved. The appellants' contention that this was improper rests upon a two-pronged argument: Title III of the Act does not authorize the use of pen registers, and further, their use is specifically prohibited by 47 U.S.C. § 605.

Our decision in United States v. Brick, *supra*, explains the error in appellants' argument. Neither Title III nor 47 U.S.C. § 605, as amended, prohibit the use of pen registers.

\* \* \* In this situation it has been held that a pen register order based upon a showing of probable cause, even if considered to be a "search" is not constitutionally offensive \* \* \*. United States v. Brick, *supra*, 502 F.2d at 223.

The propriety of their use depends entirely upon compliance with the Fourth Amendment.[10] United States v. Giordano, 416 U.S. 505, 94 S.Ct. 1820, 40 L.Ed.2d 341, 375 (1974) (Powell, J., concurring and dissenting).

■ Upon review of the government's affidavits submitted to the court in application for the orders authorizing the interception of wire communications, we are in agreement with the court below that there was probable cause for the installation of the pen registers. The affidavits contained detailed accounts of the personal observations of agents of the FBI, as well as information supplied by reliable unnamed informants, that linked the appellants to bookmaking. The informants' reliability

---

**10.** Because the orders authorizing the installation of pen registers satisfied the probable cause requirement of the Fourth Amendment, it is not necessary to decide whether their use

constitutes a "search." *See* United States v. Giordano, *supra*, 416 U.S. at 375 n. 4, 94 S,Ct. 1820; United States v. Brick, *supra* at 223.

had been established by previous dealings, and the information supplied here was based on firsthand knowledge. Each informant was actively engaged in gambling activities in the St. Louis, Missouri, area. The orders authorizing the installation of pen registers were constitutionally proper.

IX. WHETHER THE COURT ERRED IN REFUSING TO STRIKE THE TESTIMONY OF FBI AGENT WILKISON BECAUSE OF THE GOVERNMENT'S FAILURE TO RECORD AND PRODUCE HIS GRAND JURY TESTIMONY IN LIGHT OF THE FACT THAT THE TESTIMONY OF OTHER GRAND JURY WITNESSES WAS RECORDED.

 During the grand jury proceedings resulting in the indictment of the appellants, the government recorded some, but not all, of the testimony presented. For example, the testimony of Aaron Singer, a codefendant who had pleaded guilty, was recorded, while the testimony of FBI Agent Wilkison, who was one of the agents principally in charge of the investigation of the appellants, was not recorded. The appellants assign as error the unfairness of the government's action which made discovery pursuant to the Jencks Act (18 U.S.C. § 3500(e)(3)) impossible. They argue that the testimony of Agent Wilkison at trial should not have been admitted. It is important to note that the appellants do not contend that the grand jury was used abusively as a vehicle for discovery. *See* United States of America v. Pasquale Sellaro, 514 F.2d 114 (8th Cir. 1973).

While the recording of all grand jury testimony is the desirable procedure, it is not mandatory.[11] United States v. Franklin, 429 F.2d 274, 276 (8th Cir.), cert. denied, 400 U.S. 967, 91 S.Ct. 380,

27 L.Ed.2d 387 (1970); F.R.Crim.P. 6. Moreover, the selective recording of grand jury testimony has been held not to be offensive to due process. United States v. Arradondo, 483 F.2d 980, 984 (8th Cir. 1973). While we are sympathetic to the appellants' complaint and recognize the limited nature of the relief sought, this Court is without power to amend Rule 6 of the Federal Rules of Criminal Procedure. The power lies with the Congress.

X. WHETHER REVERSIBLE ERROR RESULTED FROM THE INTRODUCTION INTO EVIDENCE OF A NEWSPAPER ARTICLE PREJUDICIAL TO THE APPELLANTS.

 The government introduced, and had read to the jury, the contents of a newspaper article which FBI agents had observed appellant Lekometros read to appellants Padratzik and John. It was admitted for the purpose of proving the guilty knowledge of the appellants.[12] The relevancy of the newspaper article is not contested. The appellants argue, rather, that the prejudicial effect of its introduction into evidence outweighed the probative value. They assert that the verbatim reading of the newspaper article attacked their character and intimated they were part of a more heinous conspiracy than the one charged. We agree that the article should not have been read, but find the error harmless.

The court instructed the jury, immediately after the newspaper article was read, to consider only the fact that Mr. Lekometros had read the article to Messrs. Padratzik and John, and not to consider the article as proof of any fact stated therein. The government's testimony which followed also was limited to the relevant issue of *scienter*; the prejudicial nature of the article was not emphasized either during trial or in closing

---

11. Rule 6 of the Federal Rules of Criminal Procedure has been severely criticized for not requiring the government to record all grand jury testimony. *See e. g.*, United States v. Arradondo, 483 F.2d 980, 984 n. 4 (8th Cir. 1973); United States v. King, 478 F.2d 494, 507 (9th Cir. 1973), cert. denied, Light v.

United States, 414 U.S. 846, 94 S.Ct. 111, 38 L.Ed.2d 94 (1974); Wright, Federal Practice and Procedure, § 103 at 161.

12. 18 U.S.C. § 1952 requires, as an element of proof, the knowing involvement in an unlawful activity.

argument. This isolated intrusion of prejudicial evidence in a record strongly supporting the verdict of the jury had but slight, if any, effect and must be judged as harmless. *See* United States v. Oliver, 492 F.2d 943 (8th Cir. 1974); United States v. Harpel, 493 F.2d 346 (10th Cir. 1974).

## XI. WHETHER THE ADMISSION INTO EVIDENCE OF THE RECORDED STATEMENTS OF PERSONS NOT DEFENDANTS AT TRIAL VIOLATED THE RULE AGAINST HEARSAY.

The appellants objected to twenty of the thirty-five recorded communications admitted into evidence on the ground that they contained statements of persons not defendants at trial. The appellants contend that the admission of these recordings violated the rule against hearsay.

A well recognized exception to the rule against hearsay provides:

> * * * [O]ut of court statements made by a conspirator can be admitted against both declarant and his coconspirator if there is independent evidence of the conspiracy and if the statements were made during the pendency of the conspiracy in furtherance of the conspiracy itself.

United States v. Overshon, 494 F.2d 894, 898 (8th Cir. 1974).

The exception is not limited to the statements of conspirators who are made defendants at trial. United States v. Richardson, 477 F.2d 1280, 1283 (8th Cir.), cert. denied, 414 U.S. 843, 94 S.Ct. 104, 38 L.Ed.2d 82 (1973).

The statements of Eugene Hanon, Aaron Singer and David Goldberg, if hearsay, were within the exception to the rule and properly admitted. There is independent evidence in the record to indicate that they were coconspirators and that their statements were made during the conspiracy and in furtherance of it. Because we find no independent evidence that Joe Samuelson, Ben Cohen and Mark Hanon were coconspirators, a closer review of their statements is necessary.

The statements of Ben Cohen and Mark Hanon were not hearsay. Their statements were received into evidence for the fact that the statements were made and not for the truth or falsity of the matters asserted. The statements of Joe Samuelson, with a few exceptions, were properly received on the same basis. The remaining statements were received by the court on the government's offer of proof that he would be shown to be a coconspirator. *See* United States v. Reed, 446 F.2d 1226, 1231 (8th Cir. 1971). Moreover, the court instructed the jury that before it could use the statements against anyone but the declarant, it had to find that Mr. Samuelson was a coconspirator. There is nothing in the record to indicate that the jury did not follow that instruction. We also note that no motion to strike Samuelson's testimony at the close of the evidence was made.

## XII. THE SUFFICIENCY OF THE EVIDENCE.

### A. THE SUBSTANTIVE OFFENSE.

Appellants Padratzik and Bernstein challenge the sufficiency of the evidence to support the verdict of the jury finding them guilty of violating 18 U.S.C. § 1952 as a principal or an aider and abettor under 18 U.S.C. § 2. Section 1952 requires proof: (1) that a facility in interstate commerce was used by the defendants, (2) with intent by them to carry on or facilitate the carrying on of an unlawful activity in Missouri, and (3) thereafter they committed an act or attempt in furtherance of the unlawful activity. Spinelli v. United States, *supra*, 382 F.2d at 893. The aiding and abetting statute requires proof of some affirmative participation which at least encourages the perpetrator. United States v. Atkins, 473 F.2d 308, 310 (8th Cir.), cert. denied, 412 U.S. 931, 93 S.Ct. 2751, 37 L.Ed.2d 160 (1973).

The appellants concede the sufficiency of the evidence of use of a facility in

interstate commerce — the telephone. They challenge the sufficiency of the evidence to support the second and third elements. We view these challenges in the light most favorable to the jury verdict with all evidentiary conflicts resolved in favor of that determination. United States v. Simone, 495 F.2d 752, 753 (8th Cir. 1974).

In this light, we hold that the jury could find the requisite intent from the recordings of the conversations between appellant Padratzik, in Missouri, and appellant Bernstein, in Las Vegas. The interstate telephone calls were used to pass line information from Bernstein to Padratzik with knowledge on the part of both that the line information would be used in a bookmaking operation by Padratzik and others in Missouri.

The jury finding of the subsequent overt act in furtherance of an activity violative of state law turns upon the requirements of Mo.Rev.Stat. §§ 563.350 and 563.360. The appellants argue that the evidence is insufficient to show a violation of either statute because there is nothing to show that they recorded or registered bets. Such a showing would prove the violation of state law. Mo. Rev.Stat. § 563.360, however, prohibits more than the act of recording bets or wagers. United States of America v. Pasquale Sellaro, *supra,* 514 F.2d at 120.

The evidence shows that appellant Padratzik distributed to Missouri bookmakers the line information received from Las Vegas by telephone. Moreover, the gambling paraphernalia seized at the arrest of appellants Padratzik and John supports the conclusion that they too recorded bets or wagers. The jury conclusion that Padratzik acted in violation of 18 U.S.C. § 1952, and that Bernstein, who supplied the line information necessary to the gambling operation, was at the very least an aider and abettor punishable as a principal is supported by the record.

## B. THE CONSPIRACY OFFENSE.

All appellants challenge the sufficiency of the evidence to support their conviction of conspiracy. Appellant John argues further that even if the evidence shows the existence of a conspiracy, his participation therein was not violative of federal law.

The record shows a concert of action among the appellants. Padratzik received the line information from his Las Vegas contact, Bernstein, and then directed his employee, John, on the use of that line information. John, in turn, would report to Padratzik on the bets received. Appellant Lekometros also maintained a Las Vegas contact, David Goldberg,[13] for the receipt of line information. Padratzik and Lekometros would compare and discuss the line information received from their respective sources. Together with appellant John and others, they would also meet together to discuss the operation of the bookmaking business. Other meetings were held in Las Vegas with Padratzik, Lekometros, Bernstein and Goldberg for the same purpose.

John's contention that his participation in the conspiracy was not violative of federal law rests upon his asserted lack of knowledge of use of an interstate facility. He relies on United States v. Barnes, 383 F.2d 287 (6th Cir. 1967), cert. denied, 389 U.S. 1040, 88 S.Ct. 780, 19 L.Ed.2d 831 (1968). The reliance is misplaced, for the record supports the conclusion that John knew the telephone was used by Padratzik in Missouri to obtain line information from a Nevada source.

A conspiracy is rarely proved by direct evidence. The proof usually rests upon circumstantial evidence and inferences drawn from the relationship of the parties. Koolish v. United States, 340 F.2d 513, 523 (8th Cir.), cert. denied, 381 U.S. 951, 85 S.Ct. 1805, 14 L.Ed.2d 724 (1965). Here, the jury could conclude from the

---

**13.** Mr. Goldberg was severed from the trial and the charges against him were later dismissed by the government.

meetings attended by John, where gambling was discussed and telephone calls attempted, that he knew of the Las Vegas contact.

## XIII. WHETHER SUBMISSION OF THE CASE TO THE JURY ON THE THEORY OF ONE CONSPIRACY WAS CORRECT.

██ The jury was instructed that before it could find the appellants guilty of conspiracy, it had to find beyond a reasonable doubt that a conspiracy existed and that each appellant was a member thereof. The appellants assert that the evidence showed not one but several conspiracies and argue that the failure of the instruction to conform to the evidence requires reversal. They cite Kotteakos v. United States, 328 U.S. 750, 66 S.Ct. 1239, 90 L.Ed. 1557 (1946).

The facts here, however, are dissimilar to those presented in *Kotteakos*, for the evidence establishes the existence of but one conspiracy.

The answer to the question whether there is a single conspiracy * * * depends on whether there is a single agreement. There may be an undertaking to commit one crime or several crimes. If there is but one agreement, there is but one conspiracy. A test whether the activities of the defendants constitute a single conspiracy is whether there is a common purpose underlying the separate acts, whether the same objective is being pursued in each instance, and whether there is concerted action to achieve this end.

Koolish v. United States, *supra*, 340 F.2d at 524, citing from United States v. Speed, 78 F.Supp. 366, 368 (D.D.C.1948). The facts recited in section XII show that each appellant acted with the others to promote the operation of the gambling business. The fact that they may have also acted as independent bookmakers does not preclude their participation in the single conspiracy. United States v. Hanon, 428 F.2d 101, 108 (8th Cir. 1970), cert. denied, 402 U.S. 952, 91 S.Ct. 1608, 29 L.Ed.2d 122 (1971).

Affirmed.