Clarence T. GLADDEN, Warden, Appellant,

v.

Martin Rene FRAZIER, Appellee.

No. 22140.

United States Court of Appeals Ninth Circuit.

Jan. 24, 1968.

Rehearing Denied April 15, 1968.

Thomas H. Denney (argued), Deputy Dist. Atty., Oregon City, Or., Robert Y. Thornton, Atty. Gen. of Oregon, David H. Blunt, Asst. Atty. Gen., Salem, Or., Roger Rook, Dist. Atty. for Clackamas County, Oregon City, Or., for appellant.

Richard D. Barber (argued), Salem, Or., for appellee.

Before MADDEN, Judge of the United States Court of Claims, and MERRILL and DUNIWAY, Circuit Judges.

MADDEN, Judge:

The appellee Frazier was convicted in 1965 of second degree murder in the Circuit Court of the State of Oregon. He was sentenced to imprisonment in the Oregon State Penitentiary for a term not to exceed twenty-five years. He appealed his conviction to the Supreme Court of Oregon, which court affirmed his conviction. State v. Frazier, 245 Or. 4, 418 P.2d 841 (1966). He then petitioned the United States District Court for the District of Oregon, pursuant to the provisions of §§ 2241–2254 of Title 28, United States Code, for a writ of habeas corpus. In that court his petition was superseded by a Pre-Trial Stipulation and Order. The district court found that in Frazier's Oregon murder trial his constitutional rights had been violated in several specified regards. The court therefore granted the petition and ordered the warden to release Frazier from custody within 20 days unless the State of Oregon granted Frazier a new trial on the murder charge, or unless the warden obtained from this court of appeals a stay of the operation of the district court's order pending the warden's appeal to this court, if he did so appeal. The warden has appealed, asserting that the district court committed error in granting Frazier's petition for habeas corpus, and the merits of his appeal are now before this court for decision. We consider the several occurrences in the trial, which occurrences the district court held to have involved violations of Frazier's constitutional rights.

Frazier and Rawls, a cousin of Frazier, were jointly indicted by the Oregon authorities for the murder of one Marleau. Rawls made a confession to the Oregon authorities, first orally and then in a writing signed by him, which confession deeply implicated Frazier in the killing. Rawls later pleaded guilty to second degree murder and, when Frazier's trial took place, had not yet been sentenced on his plea of guilty.

In Frazier's trial, the Oregon prosecutor, in his opening statement to the jury, stated in considerable detail the evidence which he intended to present, naming the witness or witnesses who would testify to the several items of evidence. He stated that he expected Rawls to testify to the commission of the crime, and recited what Rawls' testimony would be. He did not say that Rawls had confessed.

When the prosecutor had completed his opening statement, Frazier's defense counsel moved for a mistrial. The court denied the motion. The prosecutor had subpoenaed Rawls, and called him to the witness stand. When questioned, Rawls claimed the privilege against self-incrimination and refused to answer the prosecutor's questions. The trial judge sustained Rawls' claim of privilege, and Rawls left the witness stand. Frazier's defense counsel again moved for a mistrial, and the motion was again denied. The prosecuting attorney, in the course of a lengthy trial, made no other reference to any statement made by Rawls.

The events above recited constituted one of the grounds on which the district court based his grant of Frazier's application for the writ of habeas corpus. The court held that the prosecutor's recital, in his opening statement, of what testimony he expected from Rawls, while the prosecutor held in his hand several papers, one of which was Rawls' signed confession, and read several times from that paper, was, in effect, the introduction before the jury of Rawls' statement, as to which Frazier's counsel had no opportunity to cross-examine Rawls.

■ In any case in which counsel for a litigant elects to make an opening statement outlining to the jury the substance of what he expects to prove, and naming the witnesses by which he hopes to prove it, rather than leaving it to the jury to pick up the thread of the continued story from the succession of incidents, each incident testified to by a separate witness, there is the possibility that the testimony which counsel has spoken of will never materialize on the witness stand. The expected witness may die or disappear or may effectively claim a privilege not to testify, or some person who has the right to prevent the witness from testifying may assert that right. If it happens that counsel does not get the expected testimony, he has to do the best he can without it. If he can prove his case without it, he may still win. But a rule that a mistrial must be declared because the expected testimony outlined in the opening statement is never given from the witness stand, and consequently the adversary never has a chance to test its truth by cross-examination, would be a wasteful and mischievous rule. The controlling question should be the good faith or lack of good faith of counsel in saying what he said in his opening statement and the likelihood that the opening statement was unfairly prejudicial to the defendant. Douglas v. State of Alabama, 380 U.S. 415, 85 S.Ct. 1074, 13 L.Ed.2d 934; Namet v. United States, 373 U.S. 179, 180–190, 83 S.Ct. 1151, 10 L.Ed.2d 278.

■ In the instant case, at the beginning of the trial and before the jury was selected, Frazier's lawyer, in the presence of the prosecutor, said he had information that Rawls, if called as a witness, would claim his privilege against self-incrimination. He did not say what the source of his information was. Some days before Frazier's trial, the prosecutor had telephoned to Rawls' lawyer, Mr. Jacobs, to get permission to talk to Rawls. Permission was not immediately given, Jacobs saying that he himself had not talked to Rawls yet. The next day the prosecutor's assistant, Thomas, picked up Jacobs and transported him to the jail, where Jacobs talked to Rawls, then told Thomas that Rawls was going to refuse to testify, and gave permission to Thomas to talk to Rawls, saying, "All right, you talk to him. This is what he tells me. This is his own decision." Between that time and the trial, a deputy sheriff had talked to Rawls and had reported to the prosecutor that he felt sure that Rawls would testify and that Rawls' brothers, who had conversed with Rawls, had told the deputy that he wanted to testify and they thought he would testify, in spite of the advice of his lawyer. Rawls' probation officer told the prosecutor that he thought Rawls would testify.

In addition to the foregoing reasons for the prosecutor to believe that Rawls would, if called to the stand, testify, there was of course the fact that Rawls had pleaded guilty and was awaiting sen-

tence, and would feel under strong compulsion not to refuse to cooperate with the prosecutor.

The Oregon trial judge, who was in the best position to determine whether the prosecutor had acted in good faith in calling Rawls to the witness stand, and whether this incident, when coupled with the opening statement, was prejudicial to the defendant, held that the prosecutor had acted in good faith and denied a motion for mistrial. We have before us the same cold record which the United States District Court had before it in this habeas corpus case, and we are in as good a position as was the district court to determine whether the Oregon court's implied findings were supported by the evidence. The district court's position in the habeas corpus case may well have been that good faith and prejudice were not the issues, but that counsel acts subject to the risk that the expected testimony which he recites in his opening statement, if it does not materialize, will require a mistrial. If that was the view of the district court, it was erroneous.

The fact that Rawls' expected testimony, once it became unavailable, was never again mentioned in the extended trial is of some significance on the question of the prosecutor's good faith, and of great significance on the question of the prejudicial effect of the opening statement and the calling of Rawls to the stand.

The Oregon trial judge said, in denying Frazier's second motion for a mistrial, that he would instruct the jury not to give any weight to what the prosecutor had said in his opening statement about Rawls' expected testimony. He did not give a specific instruction on that point. He either forgot his earlier statement or, more probably, thought better of it. Such an instruction, if given, would have recalled the incident to the minds of the jurors. Counsel for Frazier apparently for the same reason did not desire such an instruction or he would have reminded the court of its earlier statement. The court did give a general instruction that statements of counsel are not evidence.

Counsel for Frazier rely heavily upon the Supreme Court's decision in Douglas v. State of Alabama, supra. In Douglas, after the witness had claimed the privilege against self-incrimination, the prosecutor read the confession to him, a few sentences at a time, asking the witness after the reading of each few sentences, "Did you make that statement?" Each time the witness refused to answer, claiming the privilege. Thus the prosecutor, knowing that he was not going to get any testimony from the witness, deliberately placed every word of the inadmissible hearsay before the jury, compelling the witness to repeatedly claim his right to keep silent, and thus impressing the jury with the probable truth of the statement. The prosecutor could not possibly claim that he acted in a good faith expectation that the witness would testify. Douglas was a flagrant case of purposely and in bad faith placing before the jury in the most impressive possible manner inadmissible evidence the truth of which could not be tested by cross-examination. The "evidence" thus offered was the only evidence relating to a crucial element of the prosecution's case. Counsel for Frazier does not cite any case in which an appellate court has reversed a judgment for the reason relied upon by the district court in this phase of the instant case.

In the case before us, there is no problem of lack of opportunity to confront a witness who had given testimony, either directly or, as in Douglas v. State of Alabama, supra, indirectly by having his extra-judicial statements read to him and to the jury while he refused to confirm or deny his having made the statements attributed to him. Rawls was on the witness stand only momentarily, and neither by question nor answer was anything which was contained in his confession brought to the attention of the jury. Our problem, then, is whether the references to Rawls in the opening statement, followed by the calling of Rawls to the witness stand, was prosecutorial misconduct. We hold that it was not. We have shown above that it was done in a

good faith expectation that Rawls would testify. Namet v. United States, supra; Leonard v. United States (C.A. 9, 1960) 277 F.2d 834, 841; State v. Broadhurst, 184 Or. 178, 219–227, 196 P.2d 407 (1948).

The district court was in error in finding a violation of a constitutional right of Frazier in the events relating to the prosecutor's opening statement.

The second ground relied upon by the district court in granting Frazier's petition for a writ of habeas corpus was the admission in evidence, in Frazier's Oregon trial, of a written statement, signed by him, which recited his actions in relation to the crime, which statement seriously incriminated him. The district court concluded that the taking of the statement from Frazier was a violation of his constitutional rights and that the statement was, therefore, inadmissible in evidence, and its admission was a ground for granting his petition for a writ of habeas corpus.

■ The federal constitutional requirements applicable to this case, in regard to the warnings which must be given by the police to one accused of crime in order to make valid and usable against him information obtained from him by police questioning are the requirements prescribed by the Supreme Court in Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964). The stricter requirements of Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), were not applicable to this case, in which the Oregon trial began in 1965. Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966).

When Frazier was taken into custody and questioned by the police, he admitted going out with Rawls on the night of the homicide; claimed that he and Rawls were alone; talked vaguely about getting shoe polish on his clothing. At that point he was advised that he had a right to an attorney and that any statement that he made could be used against him at a trial. When questioned more pointedly, he admitted that he and Rawls were with the man, Marleau, who had been killed on the night in question. He indicated that both he and Rawls "did it"; claimed Marleau made homosexual advances and was driving wildly. He said, "I think I had better get a lawyer before I talk any more. I am going to get into trouble more than I am in now." A detective said, "You can't be in any more trouble than you are in now." The questioning continued. Frazier made no further mention of a lawyer. He made a complete statement admitting that he hit Marleau about the head at least twice with a rock, but denying that he strangled him. His statement was typed, he was asked to sign it, and was told that if he did not have money to hire a lawyer one would be appointed for him. He was questioned further, was advised to read the statement carefully, which he did for some ten minutes, and then signed it. The statement said that the signer had not been threatened or coerced; had not been promised any reward or immunity; knew that he was not required to make any statement, and that any statement which he made could be used against him in criminal proceedings. The statement concluded with language certifying that the signer had been advised of his constitutional right and had waived his right to have counsel present while he was questioned.

The trial court heard, in chambers, the tape recording of the questioning of Frazier. It held that the oral and written statements of Frazier had been made voluntarily, and admitted the written statement in evidence over the objection of counsel for Frazier. The statement was read to the jury.

■ There was nothing about Frazier's statement which would have made it constitutionally objectionable under the doctrines which prevailed before the Supreme Court's decision of 1964 in Escobedo v. State of Illinois, supra. There was no physical or mental coercion, no prolonged interrogation, with or without relays of interrogators, no deprivation of rest or food, no deficiency in age or

intelligence or experience. If, then, this 1965 statement was vulnerable on constitutional grounds, it was because its taking by the police did not comply with the new requirements of Escobedo, supra, decided in 1964. The new doctrine added by Escobedo was that when the suspect was in police custody, even before indictment but after the investigation had begun to focus upon the suspect, and the police were carrying out a process of interrogation that lent itself to eliciting incriminating information, the suspect had requested and been denied an opportunity to consult with *his* lawyer, the police had not effectively warned him of his absolute constitutional right to remain silent, and the accused had been denied "the assistance of counsel," no statement elicited by the police during the interrogation could be used against him in a criminal trial.

Escobedo was not a broad, expansive, doctrinal decision. It was a venture into new legal territory, and the stress in the Court's statement was upon its extension of the right of assistance of counsel, which only in the preceding year had been, in Gideon v. Wainwright, 372 U.S. 335, 83 S.Ct. 792, 9 L.Ed.2d 799 (1963), held binding upon the states in trials, to proceedings at the police station under a certain defined combination of circumstances. In the Court's opinion in Escobedo, the paragraph beginning, "We hold," 378 U.S. at pp. 490–491, 84 S.Ct. 1758, 12 L.Ed.2d 977, recites, in a single long sentence which we have paraphrased above, the several circumstances which are required to exist in combination to bring into effect the new exclusionary rules.

■ Early in the interrogation, and before Frazier had made any statement of significance, he was advised that he had a right to an attorney and that any statement which he made could be used against him in a trial. He did not, as Escobedo did, request an opportunity to consult with any lawyer. He said, at a later point in the interrogation we have recited above, "I think I had better get a lawyer before I talk any more. I am going to get into trouble more than I am in now." At the time involved in this case, there was no constitutional obligation on the part of a state to advise a suspect that he had a right to consult a lawyer during a police investigation, and there was no obligation to supply him with a lawyer. The interrogators had no duty, then, to follow up the suspect's statement that he thought he had better get a lawyer, by asking him to elaborate it. He had made the statement, and knew whether he wanted to pursue it or not. He did not pursue it, but continued to make his statement.

We conclude that, under the teachings of the Supreme Court applicable in the two-year interval between Escobedo and Miranda, the statement which Frazier made was admissible in evidence. Escobedo is specific as to what it decides, and Johnson v. State of New Jersey, supra, is specific as to the date upon which the stricter teachings of Miranda became applicable. It is not for this court, or for any federal court inferior to the Supreme Court of the United States, to expand the Supreme Court's carefully defined ruling in Escobedo. The district court's conclusion that Frazier's statement had been unconstitutionally obtained was erroneous.

Counsel in their briefs have devoted considerable attention to the question whether Frazier, by taking the witness stand in his own defense and testifying in substantial accord with what he had said in his signed statement, which had been admitted in evidence over his objection, waived the objection. Since we have concluded that the objection was without merit, it is unnecessary to decide and we do not decide whether there would have been a waiver if the objection had been valid.

■ In the pre-trial stipulation upon which the case was heard in the district court, under the heading "Issues of Law," issue No. 1 of the four stated issues was as follows:

Was the search and seizure of petitioner's duffel bag in violation of the con-

stitutional prohibition against unreasonable searches and seizures?

The district court, having decided, as we have seen, that each of two other grounds was sufficient to support the grant of the writ, did not discuss or decide the issue of law just above stated. Since we are holding that the district court was in error in its decision as to each of the two grounds referred to, it is necessary for us to advert to issue No. 1 which the district court did not resolve. The search of the bag was the subject of the first assignment of error in Frazier's appeal of his conviction to the Supreme Court of Oregon. As we have seen, that court sustained the conviction. State v. Frazier, 245 Or. 4, 418 P.2d 841 (1966). The pertinent facts regarding the search in question are recited in the opinion of the Supreme Court of Oregon. After the police had taken Frazier into custody they arrested Jerry Rawls. They had no search warrant. They asked Rawls if they could have his clothing. He said yes. Asked where his clothes were, he said they were in a blue bag in his bedroom. He shared the room with Frazier, who was there for a few days on leave from the Marine Corps. The bag was opened and in it were found clothing of both Rawls and Frazier and other things belonging to Frazier. The clothing had stains on it which appeared to be blood stains. The Oregon court said that Frazier did not contend that the search of the house and the room was unreasonable, but contended that the search of the bag and the seizure of its contents violated the Fourth Amendment. The court said that Rawls had authority to consent to the opening of the bag which contained his clothing; that having opened the bag and found bloody clothing, the police, who were investigating a murder case, properly seized it. They did not know that the bag did not belong to Rawls until they opened it and found Frazier's clothing in it. The court held that the search was lawful because of what became visible to the police when they searched.

 The Oregon court's disposition of the search and seizure question was, we think, correct, and we rest our decision on that question upon the same ground. As an additional and alternative ground, we feel certain, beyond a reasonable doubt, that the fact of the search and the bloody clothing which it discovered had no effect upon the outcome of the case. Frazier took the witness stand and testified fully as to the affray in which he participated and as to the blood which was on his clothes after the affray. The bloodstained clothes could have added nothing to his own testimony. The rule as to harmless error laid down by the Supreme Court in Chapman v. State of California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705 (1967), though it is strict, is fully satisfied by the facts of this case.

The judgment of the district court is reversed, and the court is directed to dismiss the petition for a writ of habeas corpus.