UNITED STATES of America,
Appellee,

v.

Sterling Lyle WALLACE, Appellant.

No. 71–1141.

United States Court of Appeals,
Eighth Circuit.

Jan. 20, 1972.

Joseph P. Stevens, Minot, N. D., for appellant.

Eugene K. Anthony, Asst. U. S. Atty., Harold O. Bullis, U. S. Atty., Lynn E. Crooks, Asst. U. S. Atty., Fargo, N. D., for appellee.

Before MATTHES, Chief Judge, LAY, Circuit Judge, and HUNTER, District Judge.

LAY, Circuit Judge.

Sterling Lyle Wallace appeals from a judgment of conviction of the crime of first degree murder under 18 U.S.C. §§ 1111 and 1153. The defendant is of Indian descent, as was the victim, Cornell Bear. Defendant was charged with killing Cornell Bear in the early morning hours of August 7, 1970, in White Shield, North Dakota, an Indian community within the confines of Fort Berthold Indian Reservation. Federal jurisdiction over the crime and the defendant exists by reason of 18 U.S.C. § 1153. On appeal the defendant attacks (1) the sufficiency of evidence to sustain his

conviction and (2) the alleged prejudicial misstatements of the prosecuting attorney in his opening statement. We affirm.

The relevant facts disclose that on the evening of August 6, 1970, or possibly the early hours of August 7, the victim, Cornell Bear, got involved in an altercation between Wallace and another guest which erupted during a drinking party at the home of Teresa Price in White Shield. Wallace left the party and went to the home of his father-in-law, which was quite close to the Price house. He reappeared outside minutes later armed with one or more knives taken from the household kitchen. Wallace attacked one of the men outside, but was diverted by Cornell Bear who threw a garbage can lid at him. According to several witnesses, the defendant then turned and began chasing Bear down a street in front of the Price home with a knife in his hand. The defendant admits chasing Cornell Bear with the knife. The victim's mother testified that she saw Cornell running down the street, watched him fall down and heard a scream. The other witnesses only saw both men disappear into the night. Defendant was seen again a short time later hurrying off into the fields surrounding White Shield. The victim's body was discovered in a neighbor's backyard garden at approximately 8:15 a. m. the following morning. A butcher knife was also found in a trash barrel near the body, and was identified as resembling one of those knives removed from the kitchen by the defendant the night before. No fingerprints or blood traces were found on it. Blood tests confirmed that the defendant's watchband was stained with type A blood. Both defendant and decedent had type A blood.

■ We have reviewed the entire record and find that the evidence, although circumstantial, is not equivocal on its face, and sufficient to sustain the verdict. If believed, considering all of the attendant circumstances, there exists substantial evidence to sustain a finding of defendant's guilt beyond a reasonable doubt.

Defendant's second claim of error is that the prosecuting attorney made inaccurate and prejudicial statements in his opening remarks. This error relates to the failure of the government to call certain witnesses the prosecuting attorney stated in his opening remarks would be called. Additionally it is argued that the prosecutor implied that the government would introduce certain incriminating evidence which the defendant claims was not proven.[1]

■ No objection was made at the time of the comments since the defendant had no way of knowing what the government would prove or who the government would call as witnesses. More

1. The statements made by the prosecutor were as follows:

(1) "We're going to have Mrs. Delores White Bear, who can identify a knife that was involved in this action." The evidence showed only that Mrs. White Bear thought the knife could have been from her kitchen. There was no proof that the knife was in fact the murder weapon. It had no fingerprints or blood on it; however, it was uncovered at the scene of the crime.

(2) "We're going to have a Mr. Larry Halvorson, who is employed in the office of the State Toxicologist to show part of the chain of evidence." "[A]nd, also, Mr. Bill Deane, who was present during part of the incidents leading up to this alleged crime." These individuals in fact did not take the stand for the prosecution.

(3) "We're going to have a Mr. Allison Simms. . . . He's a laboratory man from Washington, D.C., working with the Federal Bureau of Investigation, and he is coming out to testify as to certain tests that he ran and performed on samples of clothing, and whatever, that were submitted to the . . . Federal Bureau of Investigation—for analysis." "We're going to have Dr. Mahlom or M. W. Garrison, a doctor from Minot, North Dakota, who will testify as to drawing a sample of the Defendant's blood and typing it." The evidence showed that defendant had human blood on his clothes, but not what type. His watchband had type A blood on it. The other tests revealed that both the decedent and the defendant had type A blood.

significant, though, is the fact that defendant's counsel did not thereafter move for cautionary instructions or urge this ground of error in a motion for new trial. Cf. Cook v. United States, 354 F. 2d 529 (9 Cir. 1965). Counsel did not in any way attempt to bring this alleged error to the trial court's attention. No one should be more cognizant of possible prejudicial trial error at the time of trial than the counsel for a defendant. A reviewing court may consider this circumstance in weighing the alleged prejudicial effect on the jury. Counsel's failure to raise an objection points up the difficulty of our finding prejudicial effect on the jury.

Prejudicial misconduct may take place when unfair statements are injected into opening remarks by a prosecutor with knowledge that they cannot be proven. Cf. Jones v. United States, 119 U.S.App.D.C. 213, 338 F.2d 553 (1964). However, we conclude the statements here were not misleading in view of the government's proven case. Nor can we say that the government's innocent failure to call anticipated and specifically named witnesses rendered the verdict invalid. Cf. Mares v. United States, 409 F.2d 1083, 1085 (10 Cir. 1968), cert. denied, 394 U.S. 963, 89 S. Ct. 1314, 22 L.Ed.2d 564 (1969). In this regard we adopt the analysis made by the Court of Appeals of the Ninth Circuit in Gladden v. Frazier, 388 F.2d 777, 779 (9 Cir. 1968):

"In any case in which counsel for a litigant elects to make an opening statement outlining to the jury the substance of what he expects to prove, and naming the witnesses by which he hopes to prove it, rather than leaving it to the jury to pick up the thread of the continued story from the succession of incidents, each incident testified to by a separate witness, there is the possibility that the testimony which counsel has spoken of will never materalize on the witness stand. The expected witness may die or disappear or may effectively claim a privilege not to testify, or some person who has the right to prevent the witness from testifying may assert that right. If it happens that counsel does not get the expected testimony, he has to do the best he can without it. If he can prove his case without it, he may still win. But a rule that a mistrial must be declared because the expected testimony outlined in the opening statement is never given from the witness stand, and consequently the adversary never has a chance to test its truth by cross-examination, would be a wasteful and mischievous rule. The controlling question should be the good faith or lack of good faith of counsel in saying what he said in his opening statement and the likelihood that the opening statement was unfairly prejudicial to the defendant. Douglas v. State of Alabama, 380 U.S. 415, 85 S. Ct. 1074, 13 L.Ed.2d 934; Namet v. United States, 373 U.S. 179, 180–190, 83 S.Ct. 1151, 10 L.Ed.2d 278."

Judgment affirmed.