UNITED STATES of America, Appellee,

v.

Archie Albert LAVALLIE, Jr., Appellant.

No. 81–1595.

United States Court of Appeals,
Eighth Circuit.

Submitted Oct. 12, 1981.

Decided Dec. 18, 1981.

Rehearing Denied Feb. 4, 1982.

Richard W. Olson, argued, Murray, Olson, Larivee, Bohlman & Engen, Ltd., Grand Forks, N.D., for appellant.

James R. Britton, U. S. Atty., Lynn E. Crooks, argued, Asst. U. S. Atty., Fargo, N.D., for appellee.

Before LAY, Chief Judge, McMILLIAN, Circuit Judge, and COLLINSON,* Senior District Judge.

---

* The Honorable William R. Collinson, United States Senior District Judge for the Western District of Missouri, sitting by designation.

McMILLIAN, Circuit Judge.

Archie Albert Lavallie, Jr., appeals from a final judgment entered in the District Court for the District of North Dakota upon a jury verdict finding him guilty of carnal knowledge of a female under 16 years of age, in violation of 18 U.S.C. §§ 1153, 2032. The district court sentenced Lavallie to five years imprisonment. For reversal Lavallie argues that the district court erred in (1) instructing the jury that voluntary intoxication is not a defense to the crime charged, (2) limiting the cross-examination of a prosecution witness, and (3) allowing the jury verdict to be based on conjecture and speculation resulting from the prosecutor's misconduct at the trial. Because we feel that the intoxication instruction was unwarranted and substantially prejudicial, we reverse and remand the case for a new trial.

On the evening of October 8, 1980, Lavallie left the home of Wanda Enno and went to the home of his sister, Sandra Davis, where he asked his thirteen-year-old niece, Lori, to return with him to babysit for Wanda's children. When Lori and Lavallie returned to the Enno home, neither Wanda nor Wanda's children were there. Lavallie stated that Lori then left the house. Lori alleged that Lavallie sent her to an upstairs bedroom and ordered her to remove her clothes. The alleged attack was interrupted by the sound of a car pulling up outside the house. Lori testified that she left Wanda Enno's house, met her boyfriend, Patrick Bercier, stopped by a relative's house, then returned to the Davis' home. Lori reported the incident to her cousins when she returned home that night but did not tell her aunt, Sandra Davis, until the following morning. At that time she was taken to a public health hospital for an examination, the results of which were inconclusive as to whether sexual intercourse had occurred.

On appeal Lavallie claims that he was substantially prejudiced by the district

court's instruction on voluntary intoxication. The district court instructed the jury, over Lavallie's objection, that "voluntary intoxication is not a defense to a crime of carnal knowledge such as charged in the indictment." Instruction No. 16. This was essentially the instruction proposed by the prosecution.[1] Lavallie did not raise intoxication as a defense and no evidence was presented to indicate that he was intoxicated at the time of the alleged attack. There was some evidence that he had been drinking on the day of the attack. Under these circumstances, Lavallie argues the instruction was unfairly prejudicial, raising the stereotype of a "drunken Indian" in the minds of the jurors. Lavallie is of Indian descent. Lavallie argues that, given the great influence that a trial judge has on the jury, this instruction denied him his right to a fair trial. We agree.

In a proper case, an intoxication instruction would be required even without a request where sufficient evidence of intoxication was introduced. *United States v. Littlebear*, 531 F.2d 896 (8th Cir. 1976) (second degree murder); *United States v. Moore*, 140 U.S.App.D.C. 309, 435 F.2d 113, 116 (1970) (per curiam) (false pretenses and grand larceny), *cert. denied*, 402 U.S. 906, 91 S.Ct. 1376, 28 L.Ed.2d 647 (1971). An instruction should not be given, however, if it lacks evidentiary support or is based on mere speculation. *United States v. Waskow*, 519 F.2d 1345 (8th Cir. 1975) (per curiam); *see also United States v. McLister*, 608 F.2d 785, 790–91 (9th Cir. 1979); *United States v. Brown*, 482 F.2d 1226 (8th Cir. 1973); *United States v. Moore, supra*, 435 F.2d 113. Given evidentiary support, an instruction that intoxication can vitiate specific intent as an element of the crime charged is entirely proper. *E.g., United States v. Johnston*, 543 F.2d 55 (8th Cir. 1976); *United States v. Jewett*, 438 F.2d 495 (8th Cir.), *cert. denied*, 402 U.S. 947, 91 S.Ct. 1640, 29 L.Ed.2d 117 (1971). Voluntary intoxication, however, is not a defense

to a crime of general intent. *United States v. Hanson*, 618 F.2d 1261 (8th Cir.), *cert. denied*, 449 U.S. 854, 101 S.Ct. 148, 66 L.Ed.2d 67 (1980); *United States v. Johnston, supra*, 543 F.2d at 58; *United States v. Meeker*, 527 F.2d 12 (9th Cir. 1975). Rape is a crime requiring general intent— only that indicated by the commission of the offense. *United States v. Thornton*, 162 U.S.App.D.C. 207, 498 F.2d 749, 752–53 (1974). For this reason, an intoxication instruction should not be given in rape cases. *E.g., Henry v. United States*, 432 F.2d 114, 119 (9th Cir. 1970), *modified on other grounds*, 9 Cir., 434 F.2d 1283 (per curiam), *cert. denied*, 400 U.S. 1011, 91 S.Ct. 576, 27 L.Ed.2d 625 (1971).

An instruction which is not founded on evidence nor related to the crime charged may be prejudicial to the defendant. Such was the case in *United States v. McLister, supra*, 608 F.2d at 791, in which the court held that it was improper to give an instruction which permitted the jury to infer that the defendant had used cocaine the night before his arrest when no evidence in the record suggested that he had done so. While the court held that the instruction alone would constitute harmless error, the conviction was reversed because of a combination of· prejudicial errors.

Similarly in *United States v. Moore, supra*, 435 F.2d 113, the instruction that "a loaded pistol is a dangerous weapon" was held prejudicial in a robbery and assault case where there was no evidence presented that the pistol used was loaded. The court did not determine if the instruction alone would warrant reversal, but reversed because of the cumulative effect of the presiding judge's questions and the prejudicial instruction.

In the present case we find that the intoxication instruction so prejudiced Lavallie's case as to deny his right to a fair trial. Unlike most cases in which a voluntary intoxication instruction is at issue, Lavallie neither requested the instruction nor raised

---

1. The prosecutor requested the following instruction: "Voluntary intoxication is not a defense to a crime of general intent such as is

charged in the indictment." (Government's Requested Instruction No. 7).

intoxication as a defense. The instruction cannot be justified as cautionary or relevant, for the crime charged was one of general intent and intoxication can be no defense to general intent crimes. The little evidence presented relating to Lavallie's drinking that day did not support an inference that he was intoxicated at the time of the alleged attack.[2] With neither evidentiary support nor relevance to the crime charged, the instruction may well have misled the jury by implying that Lavallie was "a drunken Indian." When irrelevant issues are brought to the juror's attention in a jury instruction, the results may be unfairly prejudicial to the defendant.

Lavallie raises two additional issues on appeal. Although we find no abuse of discretion on these matters, we will briefly discuss his contentions.

Lavallie argues that the district court erred in limiting his cross-examination of Linda Poitra, a government witness. Lori lived with Ms. Poitra for a time and on occasion performed babysitting duties for her children. On cross-examination, Ms. Poitra was asked to relate the details of one such babysitting incident.[3] The government objected to the question as violative of Rule 412 of the Federal Rules of Evidence which prohibits inquiry concerning a rape victim's past sexual behavior without a prior written motion filed at least fifteen days before trial. The objection was sustained and the line of questioning dropped.

Lavallie argues that the question dealt with the alleged victim's character for honesty and trustworthiness but made no formal offer of proof at the trial. He now maintains that by limiting his opportunity to cross-examine Ms. Poitra, the district court denied him the chance to show that Lori's testimony was unworthy of belief.

■ The district court has broad discretion in limiting the scope of cross-examination. *See* Fed.R.Evid. 611(b); *e.g., United States v. Drake,* 542 F.2d 1020, 1022 (8th Cir. 1976), *cert. denied,* 429 U.S. 1050, 97 S.Ct. 762, 50 L.Ed.2d 766 (1977); *United States v. Cole,* 449 F.2d 194, 199 (8th Cir. 1971), *cert. denied,* 405 U.S. 931, 92 S.Ct. 987, 30 L.Ed.2d 806 (1972). Although Lavallie contends that his question made no reference to past sexual behavior, it is difficult for the court to know what answer will be given in response to a general narrative question such as that asked of Ms. Poitra. Absent an offer of proof as required by Rule 103(a)(2) of the Federal Rules of Evidence, neither the trial court nor the appellate court on review can truly ascertain what response was expected at the time. *See United States v. Vitale,* 596 F.2d 688, 689–90 (5th Cir.) (per curiam), *cert. denied,* 444 U.S. 868, 100 S.Ct. 143, 62 L.Ed.2d 93 (1979).

In addition, Rule 608 of the Federal Rules of Evidence governs the admissibility of

---

**2.** Wanda Enno testified that she had seen Lavallie from a distance earlier in the evening and that he appeared intoxicated.

Lavallie did not testify at the trial. A statement given by Lavallie to the criminal investigator for the Bureau of Indian Affairs was read at the trial:

Last Wednesday evening, October 8, 1980, I was drinking with my dad, Archie Lavallie, Sr. and Joeby Brunelle. We were at my girl friend's, Wanda Enno's home. Wanda and I decided to go drinking, so I told her I would go and get a babysitter.

I walked to my sister's place, Sandra Davis. I walked in the house and my sister and her husband were sleeping. My nieces, Lori and Lisa, were still awake. I asked them if they wanted to babysit Wanda's children. Lori said she would babysit. Lori and I then walked to Wanda's house. When we got there, Wanda had already left with her kids.

Joeby and my dad were in the house and they told me Wanda had went to her sister's place.

Lori then left saying she was going back home. I then sat around and drank with my dad and Joeby. I got pretty drunk and must have went to bed sometime around 2:00 a. m.
I Tr. 138–39.

**3.** Q. Did you have any problems with her [Lori] babysitting for your children?
A. She took care of them.
Q. Did you ever have a time when she failed to carry out her responsibilities?
A. What do you mean?
Q. When she left the house without your knowledge.
A. Once.
Q. Would you tell the court about that.
I Tr. 131.

character evidence.[4] Cross-examination concerning specific instances of conduct is prohibited unless the witness previously testified concerning that person's character for truth or veracity. Fed.R.Evid. 608(b). We find nothing in the record to indicate that Ms. Poitra testified as to Lori's character on direct examination. In the absence of previous character testimony, Rule 608(a) requires that the credibility of a witness may only be attacked by evidence of reputation or opinion. Counsel's question concerning a specific babysitting incident was therefore properly excluded.

■ Lavallie also argues that the jury verdict was based on conjecture, speculation and unfair prejudice resulting from the prosecutor's misconduct during the trial. Specifically he alleges that (1) the prosecutor's mention of "force" in his opening statement was improper; (2) the prosecutor's closing argument was unfairly prejudicial; (3) irrelevant evidence was presented to the jury; and (4) evidence was withheld by the prosecution.

In his opening statement the prosecutor stated that there was an element of force involved in the crime. Conflicting testimony was later presented leaving unsettled the question of whether Lori was struck or merely threatened by Lavallie. Lavallie argues that because force is not an element of the crime of carnal knowledge, these remarks were intended solely to inflame and prejudice the jury with the specter of a grown man hitting a small girl prior to sexually assaulting her. Lavallie made no objection at the trial. The prosecution argues that force was part of the res gestae of the offense and so was properly mentioned.

"Prejudicial misconduct may take place when unfair statements are injected into opening remarks by a prosecutor with knowledge that they cannot be proven." *United States v. Wallace*, 453 F.2d 420, 422 (8th Cir.), *cert. denied*, 406 U.S. 961, 92 S.Ct. 2072, 32 L.Ed.2d 348 (1972). Defense counsel's failure to object during the prosecutor's opening statement cannot be faulted because defense counsel had no way of knowing at that time in the trial what the government would prove. However, defense counsel's subsequent failure to object or request cautionary instructions is significant. In *Wallace* we noted:

> Counsel did not in any way bring this alleged error to the trial court's attention. No one should be more cognizant of possible prejudicial trial error at the time of trial than counsel for the defendant. A reviewing court may consider this circumstance in weighing the alleged prejudicial effect on the jury. Counsel's failure to raise an objection points up the difficulty of our finding prejudicial effect on the jury.

*Id.* at 422.

Moreover, as noted earlier, the government did introduce evidence about the use of force during the alleged assault. That the evidence was inconclusive does not demonstrate any lack of good faith by the prosecutor. *Id., citing Gladden v. Frazier*, 388 F.2d 777, 779 (9th Cir. 1968), *aff'd*, 394 U.S. 731, 89 S.Ct. 1420, 22 L.Ed.2d 684 (1969).

■ Lavallie also argues that the prosecutor's closing remarks were unfairly prejudicial in that he commented on the credibility of witnesses and on the evidence

4. Fed.R.Evid. 608 provides in part:

(a) *Opinion and reputation evidence of character.* The credibility of a witness may be attacked or supported by evidence in the form of opinion or reputation, but subject to these limitations: (1) the evidence may refer only to character for truthfulness or untruthfulness, and (2) evidence of a truthful character is admissible only after the character of a witness for truthfulness has been attacked by opinion or reputation evidence or otherwise.

(b) *Specific instances of conduct.* Specific instances of conduct of a witness, for the

purpose of attacking or supporting his credibility, other than conviction of a crime as provided in rule 609, may not be proved by extrinsic evidence. They may, however, in the discretion of the court, if probative of truthfulness or untruthfulness, be inquired into on cross-examination of the witness (1) concerning his character for truthfulness or untruthfulness, or (2) concerning the character for truthfulness or untruthfulness of another witness as to which character the witness being cross-examined has testified.

in general. Specifically, Lavallie complains that the prosecutor invaded the province of the jury by dismissing defense counsel's remark concerning time discrepancies following the alleged attack with the statement that no one was looking at clocks, commenting on the credibility of government witnesses by noting their limited cross-examination, and stating that Lavallie's version of the evening was a complete fabrication. Again we find defense counsel's failure to make a timely objection weakens his argument. When defense counsel fails to object to the prosecutor's closing statements, the reviewing court must view the alleged error in terms of plain error and in terms of whether substantial rights were affected. *United States v. Massey,* 594 F.2d 676, 679 (8th Cir. 1979); *United States v. Davis,* 557 F.2d 1239 (8th Cir.), *cert. denied,* 434 U.S. 971, 98 S.Ct. 523, 54 L.Ed.2d 461 (1977); Fed.R.Crim.P. 52(b). Here we find that the prosecutor's remarks did not rise to the level of plain error. Given a timely objection, the court may correct any abuses by corrective instructions to the jury. *United States v. Hammond,* 642 F.2d 248 (8th Cir. 1981). The trial court has broad discretion in controlling closing arguments, *United States v. Davis, supra,* and this court has held that "a trial judge ordinarily should not be held to have erred in not deciding correctly a question that he was never asked to decide." *United States v. Lawson,* 483 F.2d 535, 538 (8th Cir. 1973), *cert. denied,* 414 U.S. 1133, 94 S.Ct. 874, 38 L.Ed.2d 757 (1974), *citing Petschl v. United States,* 369 F.2d 769, 773 (8th Cir. 1966).

Lavallie also argues that irrelevant evidence was presented by the prosecution over his objection which tended to prejudice his case. The government questioned several witnesses concerning loose change and a pack of cigarettes found near an open window in Lori's bedroom. Lavallie argues that this improperly implied that he had surreptitiously entered his sister's house to take Lori away when there was no evidence that his entry was other than through the door. We disagree.

The trial judge has wide discretion in determining the relevancy of proposed evidence. *Minnesota Farm Bureau Marketing Corp. v. North Dakota Agricultural Marketing Ass'n,* 563 F.2d 906 (8th Cir. 1977); *United States v. Eagan,* 516 F.2d 1392 (8th Cir.), *cert. denied,* 423 U.S. 856, 96 S.Ct. 106, 46 L.Ed.2d 81 (1975); *Koppinger v. Cullen-Schiltz & Assocs.,* 513 F.2d 901 (8th Cir. 1975). It was for the jury to decide whether Lavallie entered his sister's home surreptitiously by crawling through an open window or by entering through the doorway. His mode of entry is relevant to Lavallie's ultimate motive in taking Lori from the house. We find no error in the admission of this testimony.

Finally, Lavallie argues that the government suppressed evidence because the identity of Pat Bercier, Lori's boyfriend with whom she met after the alleged attack, was not known to the defense counsel until the trial. Bercier was not called to testify, the government claimed, because he could recall no details concerning the evening in question. Lavallie argues that the prosecution's repeated references to Bercier during the trial were fundamentally unfair in light of the nondisclosure.

In *United States v. Agurs,* 427 U.S. 97, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976), the Supreme Court set forth the following constitutional standard of materiality: "[I]f the omitted evidence creates a reasonable doubt that did not otherwise exist, constitutional error has been committed.... If there is no reasonable doubt about guilt whether or not the additional evidence is considered, there is no justification for a new trial." *Id.* at 112–13, 96 S.Ct. at 2402. It is uncertain whether reasonable doubt could have been created by Bercier's testimony if he truly had no recollection of the evening. Because we reverse and remand for a new trial on another ground, any unfairness which may have resulted from this nondisclosure will be eliminated in the subsequent proceedings.

In summary, we find the voluntary intoxication instruction given without evidentiary support or relevance to the crime

charged was so prejudicial as to warrant reversal.

Reversed and remanded.