**UNPUBLISHED**

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.

No. 96-4372

CRAIG LAMONT SCOTT, and KEITH E.
BRYANT,
<u>Defendants-Appellants.</u>

UNITED STATES OF AMERICA,
<u>Plaintiff-Appellee,</u>

v.                                                      No. 96-4373

KEITH E. BRYANT,
<u>Defendant-Appellant.</u>

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Frank A. Kaufman, Senior District Judge.
(CR-95-202-K)

Argued: October 26, 1999

Decided: December 13, 1999

Before LUTTIG and MOTZ, Circuit Judges, and HAMILTON,
Senior Circuit Judge.

_____

Affirmed in part, and vacated and remanded in part, by unpublished
per curiam opinion.

_____

**COUNSEL**

**ARGUED:** Harvey Greenberg, Towson, Maryland, for Appellants. James G. Warwick, Assistant United States Attorney, Baltimore, Maryland, for Appellee. **ON BRIEF:** John S. Deros, Baltimore, Maryland, for Appellant Scott. Lynne A. Battaglia, United States Attorney, Baltimore, Maryland, for Appellee.

_____

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

_____

**OPINION**

PER CURIAM:

Craig Lamont Scott and Keith E. Bryant appeal their convictions and sentences for various offenses related to several bank robberies. For the reasons stated herein, we affirm the judgments and sentences below, with the exception of Scott's sentence, which we vacate and remand for resentencing.

I.

In the summer of 1993, Craig Lamont Scott, Keith E. Bryant, Kittrell Bernard Decator, and Jonathan Mark Jones began planning and practicing a bank robbery, the proceeds of which were to be used to ease their financial problems and to fund a start-up entertainment company.

On September 21, 1993, donning masks and gloves, Scott, Bryant, Decator, and Jones robbed at gunpoint the Maryland National Bank at 6700 York Road, in Baltimore County, Maryland. Escaping with almost $290,000, they placed the money in a self-storage locker rented in the names of all four men. On June 6, 1994, Scott, Bryant, and Decator attempted to rob the First National Bank on Woodlawn Drive, in Baltimore County, but fled before taking any money.

2

On June 8, 1994, Scott, Decator, and Jones robbed the Maryland National Bank again, while Bryant waited for them at his apartment. As Jones leapt into the getaway truck, an orthopedic surgeon, Dr. Steven Kopits, spotted and chased the three men, and copied down the license plate number of the truck.

Police later apprehended Jones and Decator, recovering a dye-stained latex glove, two .9 mm pistols, a loaded revolver taken from the bank guard on June 8, a box of latex surgical gloves, two black nylon face masks, and a sweatshirt bearing a design that had been described to police by bank employees. After Scott attempted to page Decator on Decator's pager, Scott was also arrested.

Following the arrests of Jones, Decator, and Scott, the police executed a search warrant for Bryant's apartment and seized radios, cellular phones, walkie-talkies, padlocks from the storage locker, camouflage gloves, and a book entitled <u>Terror and the Urban Guerilla</u>.

In July 1994, a grand jury indicted Decator, Jones, and Scott on two counts of bank robbery, one count of attempted bank robbery, one count of conspiracy to commit bank robbery, and three counts of using and carrying firearms in the course of a violent crime. Following the severance of some counts and defendants, the Government proceeded to trial against Decator and Scott, who were convicted by a jury of the counts associated with the June 8 robbery. After separately being convicted of the counts associated with the June 8 robbery and June 6 attempted robbery, Jones agreed to cooperate with the Government.

During this first trial of Decator and Scott on the non-severed charges associated with the June 8 robbery, the Government moved to dismiss without prejudice the remaining five, severed charges (the conspiracy count and the counts related to the September 21 robbery and the June 6 attempted robbery). After Scott and Decator withdrew their initial objections to this motion, the district court granted the Government's motion, but set a deadline of March 15, 1995, for reindictment on those severed charges.

Because Jones began to offer substantial assistance to the Government in its investigation of those severed charges only one month

before the March 15 deadline, the Government sought and obtained an <u>ex parte</u> extension from the district court to May 5, 1995 for reindictment. On May 4, 1995, Decator and Scott were reindicted on the same severed charges, and Bryant was added to this indictment. Scott and Decator then moved for dismissal of the new indictment. The district court denied their motion.

Following their convictions, Decator, Scott, and Bryant were orally sentenced on February 23, 1996. The district court emphasized that it sought to ensure that each of the three defendants were treated equally in sentencing, and that Decator and Scott were not penalized as a result of being convicted in multiple trials. The district court issued a written judgment and commitment order on May 6, 1996.

II.

Scott claims on appeal that the district court erroneously denied his motion to dismiss the second indictment. We are unpersuaded.

Scott first contends that his consent to dismissal of the severed charges in the original indictment (without prejudice) was secured through misinformation provided by the Government to him and to the district court. Because this argument rests on the flawed premise that Scott's consent was required in order to dismiss the severed charges, the argument is unavailing.

Federal Rule of Criminal Procedure 48(a) provides as follows:

> The Attorney General or the United States attorney may by leave of court file a dismissal of an indictment, information or complaint and the prosecution shall thereupon terminate. Such a dismissal may not be filed during the trial without the consent of the defendant.

<u>Id</u>.

Rule 48(a) by its terms requires the defendant's consent to a dismissal where the dismissal is urged <u>during</u> the defendant's trial; the rule does not require the consent of the defendant to a dismissal where

dismissal is urged <u>before</u> trial. Here, "a" trial had begun at the time that charges were dismissed, but it was a trial only on the charges that had not previously been severed for separate trial. "The" trial on the severed charges -- the charges that Scott contends were dismissed without his consent in violation of Rule 48 -- had not yet begun, and, indeed, was not commenced until some 328 days later. Therefore, the dismissal of the severed charges did not require Scott's consent.

Scott next contends that his constitutional and statutory rights to a speedy trial were abridged by the delay between the dismissal of the original indictment and the return of the second indictment. The constitutional argument is foreclosed by Scott's failure to establish any prejudice from this six-month delay. <u>See Doggett</u> v. <u>United States</u>, 505 U.S. 647, 651 (1992). And the statutory argument has been waived by Scott's failure to raise the alleged technical violation of the Speedy Trial Act, 18 U.S.C. § 3161 <u>et seq</u> ., before the district court. <u>See</u> 18 U.S.C. § 3162(a)(2) ("Failure of the defendant to move for dismissal [on Speedy Trial Act grounds] prior to trial [. . .] shall constitute a waiver of the right to dismissal under this section.").

III.

The only other significant argument raised by appellants is their claim that the district court abused its discretion in admitting into evidence the book <u>Terror and the Urban Guerilla</u>. Specifically, Scott and Bryant argue that under Federal Rule of Evidence 403, the book should have been excluded, because its "probative value" was "substantially outweighed by the danger of unfair prejudice." <u>Id</u>. We conclude that the district court did not abuse its discretion in finding that the book's probative value was not substantially outweighed by the danger of unfair prejudice.

First, <u>Terror and the Urban Guerilla</u> was probative of the issues at trial, because it provided specific instructions on how to commit bank robberies that paralleled some of the defendants' actions. For example, the book discussed the use of walkie talkies and escape routes, and the need for practice assault drills; moreover, the book contained a section entitled "The Bank Assault as Popular Model." Second, our review of <u>Terror and the Urban Guerilla</u>, which was admitted in its entirety upon the request of <u>defense</u> counsel, convinces

5

us that whatever prejudice the book engendered against the defendants did not "substantially" outweigh its probative value.

IV.

The remaining claims raised by appellants are likewise meritless.

A.

The district court did not abuse its discretion in admitting evidence of defendants' efforts to intimidate an eyewitness, Dr. Kopits. Scott and Bryant argue that the evidence was not sufficiently reliable to be admissible under United States v. Queen , 132 F.3d 991 (4th Cir. 1997), cert. denied, 118 S. Ct. 1572 (1998). However, this argument is baseless, given Jones' corroborating testimony that he and his coconspirators had attempted to intimidate Dr. Kopits.

B.

Scott and Bryant claim that they were handcuffed and moved from the trial table to the Marshals' Service bathroom facilities in the presence of the jury, in apparent violation of United States v. Samuels, 431 F.2d 610, 614-15 (4th Cir. 1970), cert. denied, 401 U.S. 946 (1971). We find no support in the record for the claim that defendants were moved in handcuffs in the presence of the jury, and, significantly, the record contains no objection by defense counsel to this alleged handcuffing and movement.

Even if they had been so moved, we would conclude that defendants were not prejudiced by such movement. "No one should be more cognizant of possible prejudicial trial error at the time of trial than the counsel for a defendant." See United States v. Akin, 562 F.2d 459, 466 (7th Cir. 1977) (quoting United States  v. Wallace, 453 F.2d 420, 422 (8th Cir.), cert. denied, 406 U.S. 961 (1972)). Where, as here, counsel fails to object to the claimed prejudicial action, the failure itself "points up the difficulty of . . . finding prejudicial effect on the jury." Id. (quoting Wallace, 453 F.2d at 422).

C.

Scott and Bryant's claims of prosecutorial misconduct are similarly meritless. Based on our review of the record, we are satisfied that they

6

suffered no cognizable prejudice. As in <u>United States</u> v. <u>Curry</u>, 993
F.2d 43 (4th Cir. 1993), the prosecutor's "remarks were isolated, they
were not intentional, there was overwhelming evidence of guilt, and
the Government had a complete case against [the defendants]." <u>Id</u>. at
46 (citation omitted).

D.

Nor, contrary to Scott and Bryant's contention, did the district
court err in declining their request for a jury instruction on multiple
conspiracies. In <u>United States</u> v. <u>Kennedy</u>, 32 F.3d 876 (4th Cir.
1994), <u>cert</u>. <u>denied</u>, 513 U.S. 1128 (1995), we held that "[a] multiple
conspiracy instruction is not required unless the proof at trial demon-
strates that [the defendants] were involved <u>only</u> in `separate conspira-
cies unrelated to the overall conspiracy charged in the indictment.'"
<u>Id</u>. at 884 (quoting <u>United States</u> v. <u>Castaneda-Cantu</u>, 20 F.3d 1325,
1333 (5th Cir. 1994)) (emphasis in original). Here, far from establish-
ing the existence of separate conspiracies "unrelated" to the overall
conspiracy, the record reveals the existence of a single overall con-
spiracy to rob banks in order to fund the four coconspirators' enter-
tainment company and personal financial needs.

E.

We also reject Scott and Bryant's claim that the testimony of Jones,
a coconspirator who agreed to cooperate with the Government in
exchange for a favorable sentencing recommendation, was obtained
in violation of 18 U.S.C. § 201(c)(2), which prohibits the giving of
anything of value for a witness' testimony. In <u>United States</u> v.
<u>Jenkins</u>, 178 F.3d 1287 (4th Cir.) (unpublished), <u>cert</u>. <u>denied</u>, 120 S.
Ct. 263 (1999), we explained that this Circuit has never adopted the
"flawed theory" that § 201(c)(2) applies to Government attorneys who
promise favorable sentencing recommendations in exchange for truth-
ful testimony from witnesses.

F.

Also without merit is Scott and Bryant's claim that there was a vio-
lation of the Court Reporters Act, 28 U.S.C. § 753(b). We reject this

7

claim because Scott and Bryant failed "to submit the alleged problems with the record to the district court." United States v. Wood, 175 F.3d 1018 (4th Cir. 1999) (unpublished). Moreover, Scott and Bryant have failed to demonstrate any specific prejudice resulting from this alleged violation. See United States v. Gillis, 773 F.2d 549, 554 (4th Cir. 1985).

V.

The only sentencing issue warranting discussion is the need for Scott's sentences for conspiracy, bank robbery and attempted bank robbery to be vacated, and the case remanded for the limited purpose of resentencing Scott.

On May 6, 1997, we affirmed Decator's conviction, but vacated his sentences on several counts and remanded for resentencing, because in finalizing the sentencing calculations, the district court had erroneously imposed sentence outside Decator's presence. See United States v. Decator, 112 F.3d 511 (4th Cir. 1997) (unpublished). As the Government recognizes, because "Scott stands in the same footing on this issue," Appellee's Br. at 4, Scott's sentence should also be vacated and the case remanded for the limited purpose of resentencing in a manner consistent with our decision in Decator .

**CONCLUSION**

For the reasons stated herein, we affirm Scott and Bryant's convictions and sentences, with the exception of Scott's sentence, which we vacate and remand for resentencing.

AFFIRMED IN PART; VACATED AND REMANDED IN PART .

8