# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-3143

_____

United States of America,      *
                                    *

            Appellee,      *

                                    *   Appeal from the United States
      v.                          *   District Court for the
                                    *   District of South Dakota.

Jerry Medicine Horn,      *

                                    *

           Appellant.     *

_____

Submitted:  February 14, 2006
Filed:  May 18, 2006

_____

Before LOKEN, Chief Judge, BOWMAN and SMITH, Circuit Judges.

_____

BOWMAN, Circuit Judge.

Jerry Medicine Horn appeals his conviction for two sexual offenses committed against a minor in Indian country.  He argues that the District Court[1] erred in admitting testimony regarding two prior sexual assaults and in giving an instruction to the jury on the unavailability of intoxication as a defense to the crimes charged.  We affirm the conviction.

_____

[1]The Honorable Lawrence L. Piersol, Chief Judge, United States District Court for the District of South Dakota.

In November 2004, a four-count superseding indictment was filed against Medicine Horn. Counts 1 and 2 alleged acts of sexual abuse against a minor, EFH,[2] and charged Medicine Horn with aggravated sexual abuse in violation of 18 U.S.C. § 2241(a) and sexual abuse of a minor in violation of 18 U.S.C. § 2243(a). Counts 3 and 4 alleged similar acts of sexual abuse against a second minor, CC, and charged Medicine Horn with committing the same two crimes.

A jury trial was held in April 2005. The evidence presented during the trial showed that on April 3, 2004, EFH, who was then fifteen years old, and Medicine Horn both attended a party that moved to several locations during its course. The party began at approximately 10:00 p.m. near Lake Andes, South Dakota, in a rural field known by the witnesses as "Moonlight." It then progressed to a parking lot and to a dirt road before arriving south of Lake Andes at the residence of Roy Wade. Both EFH and Medicine Horn were drinking alcohol during the party. At approximately 4:00 a.m. on April 4, 2004, as the party was thinning, EFH asked Kyle Nelson to drive her back to Lake Andes. Nelson agreed. Medicine Horn then approached Nelson and requested a ride. Nelson again consented, and the three drove towards Lake Andes. Because Nelson did not wish to drive into town, he dropped the two passengers at the powwow grounds near the Lake Andes tribal housing area. At the powwow grounds, EFH and Medicine Horn walked to the announcer's booth. Therein, Medicine Horn removed EFH's right shoe, took her right leg out of her pants and underwear, and forcibly engaged her in sexual intercourse. The assault lasted approximately five minutes, after which Medicine Horn left.[3]

---

[2]We refer to all witnesses who were minors at the time of the events by their initials.

[3]Medicine Horn's defense at trial was that he never had sex with EFH. He testified that once at the powwow grounds, EFH asked to go home with him. He

Evidence was also presented that in March 2004 a small group of people gathered at a building on the powwow grounds to drink alcohol. CC, who was then thirteen years old, and Medicine Horn were both present and were eventually the only two people remaining in the building. High on drugs and alcohol, CC blacked out. When she awoke, she was alone, her shirt was ripped, her pants and underwear were down, she was bleeding from her vagina, and her jaw was sore. CC testified that she believes Medicine Horn forced sexual intercourse on her that night.

The District Court permitted the government to introduce the testimony of two additional witnesses, SA and AP, who claimed to have been sexually assaulted by Medicine Horn when they were minors. SA testified that on October 22, 1995, when she was seventeen years old, she met Medicine Horn at a party. Later that evening she went to the mobile home of Medicine Horn's brother and settled herself on the couch to sleep. Medicine Horn arrived and twice forced her to have sexual intercourse with him. Medicine Horn stopped her from crying out for help. AP testified that in 2001 or 2002, when she was fourteen or fifteen years old, she fell asleep on a couch during a party. She awoke to Medicine Horn having sexual intercourse with her. When she protested, Medicine Horn covered her mouth with his hand.

The jury convicted Medicine Horn of the sexual abuse charges involving EFH but acquitted him of the charges involving CC. Medicine Horn appeals his conviction.

II.

Medicine Horn first challenges the District Court's admission, over objection, of SA's and AP's testimony of the prior sexual assaults.

---

denied her request and, after a few moments of talking, walked home alone.

Although Federal Rule of Evidence 404(b) generally excludes the admission of evidence of a defendant's past wrongs to show his propensity to commit a charged offense, "Congress excepted sexual assault cases from this rule when it enacted Federal Rule of Evidence 413." United States v. Tyndall, 263 F.3d 848, 850 (8th Cir. 2001). Rule 413 states that in sexual assault cases, evidence of a defendant's prior commission of sexual assault is admissible and "may be considered for its bearing on any matter to which it is relevant." Fed. R. Evid. 413(a). Before evidence of a prior sexual assault may be admitted under Rule 413, however, the trial court must still apply the balancing test set forth in Federal Rule of Evidence 403 and determine that the probative value of the evidence is not "substantially outweighed by the danger of unfair prejudice." Fed. R. Evid. 403; see also United States v. Crawford, 413 F.3d 873, 875 (8th Cir. 2005).

Medicine Horn argues that, in light of infirmities in the Rule 413 evidence, the District Court reached the wrong result in performing the Rule 403 balancing test. Regarding the incident with SA, Medicine Horn asserts that the ten-year time lapse between the incident and the trial in this case caused the memories of the witnesses to the incident (including SA and Medicine Horn) to fade, thereby prejudicing his ability to rebut SA's claims. Regarding the incident with AP, Medicine Horn asserts that AP's testimony was not probative because AP could not identify the year in which the alleged assault occurred and because AP contradicted herself and the testimony of other witnesses. According to Medicine Horn, the testimony of both SA and AP was so flawed that it was of little probative value and unfairly prejudiced him.

District courts are given broad discretion in gauging the possibility of unfair prejudice under Rule 403, and we will reverse only if a district court abuses this discretion. United States v. Henderson, 416 F.3d 686, 693 (8th Cir. 2005), cert. denied, 126 S. Ct. 1343 (2006); see also Crawford, 413 F.3d at 875–76; United States

-4-

v. Blue Bird, 372 F.3d 989, 991 (8th Cir. 2004).[4]  In reviewing the District Court's decision, we keep in mind that there is "strong legislative judgment that evidence of prior sexual offenses should ordinarily be admissible." United States v. LeCompte, 131 F.3d 767, 769 (8th Cir. 1997).

Recognizing the constraints imposed by Rule 403, the District Court first heard testimony from SA and AP outside of the jury's presence.  The District Court then carefully analyzed the evidence and concluded that it was admissible because its probative value was not substantially outweighed by the danger of unfair prejudice. The District Court did not abuse its discretion in admitting the evidence of Medicine Horn's past sexual assaults.  We agree with the District Court that the Rule 413 evidence was probative because it involved substantially similar offenses as the crimes charged: all four of the alleged victims were teenage girls at the time of the assaults, each assault occurred after a party at which the victim consumed alcohol, Medicine Horn removed the victims' pants on each occasion, and Medicine Horn used force on each occasion and stopped the victims from crying out.  See Crawford, 413 F.3d at 876 (holding that evidence of similar sexual assault was probative and relevant). Though Medicine Horn identifies several flaws in the testimony of AP and SA, it was within the province of the jury to evaluate the testimony and attribute to it whatever weight the jury deemed appropriate.  See United States v. Kenyon, 397 F.3d 1071, 1076 (8th Cir. 2005).  And while Medicine Horn asserts that the evidence of his prior sexual assaults led the jury to decide the case based on the fact that he was a "bad person," the inflammatory potential inherent in the sexual nature of prior sexual

---

[4]Medicine Horn argues that under Blue Bird the District Court's Rule 403 balancing determination is subject to de novo review.  We do not read Blue Bird to so hold.  The Blue Bird Court noted that we accord deference to a trial judge's determinations made pursuant to "rules [that] require a balancing of how particular evidence might affect the jury."  372 F.3d at 991.  The Court specifically cited Rule 403 as an example of a rule mandating such a discretionary balancing to which we must accord deference.  Id.

offenses cannot be considered in evaluating the admissibility of evidence under Rule 413.  See LeCompte, 131 F.3d at 770; see also Henderson, 416 F.3d at 693 ("Evidence is not unfairly prejudicial merely because it hurts a party's case." (internal quotation marks and citation omitted)).  The question is not whether the evidence was prejudicial—it certainly was for the same reason that it was probative, i.e., it tended to prove Medicine Horn's propensity to sexually assault minors—but whether the evidence was *unfairly* prejudicial.  See United States v. Gabe, 237 F.3d 954, 960 (8th Cir. 2001).  We conclude that it was not.  It is significant that the District Court gave limiting instructions, both before SA and AP testified and at the close of evidence, advising the jury not to consider the Rule 413 evidence solely as propensity evidence.  The giving of these limiting instructions decreased the danger that Medicine Horn was unfairly prejudiced by the testimony.  See Crawford, 413 F.3d at 876 (citing United States v. Thomas, 398 F.3d 1058, 1063 (8th Cir. 2005)).  The District Court did not abuse its discretion in determining that the outcome of the Rule 403 balancing test permitted the admission of the evidence of prior sexual assaults.

Medicine Horn also asserts that the District Court's admission of the evidence of prior sexual assaults under Rule 413 violated his due-process rights.  Our Circuit rejected this argument in United States v. Mound, 149 F.3d 799, 800–01 (8th Cir. 1998), cert. denied, 525 U.S. 1089 (1999), a decision by which we are bound.

### III.

Medicine Horn's second challenge is to the District Court's instruction to the jury that voluntary intoxication is not a defense to the charged sexual abuse offenses.[5]

[5]The challenged instruction reads as follows:

There is evidence in this case tending to show that the Defendant may have been intoxicated prior to and at the time of the alleged commission of the offenses with which he is charged.  Intoxication may be used to

While Medicine Horn does not dispute that the instruction was a correct statement of the law, he argues that the District Court should not have given the instruction because he never asserted intoxication as a defense. Rather, Medicine Horn's defense was that he never committed the alleged sexual acts. According to Medicine Horn, the instruction prejudiced him because it "undermined Medicine Horn's credibility with the jury" and "raised an irrelevant, collateral issue and distracted the jury from considering Medicine Horn's actual defense." Appellant's Br. at 23. We see no merit in this argument.

This case is remarkably similar to United States v. Norquay, in which we held that the district court did not err by instructing the jury that voluntary intoxication was not a defense to sexual abuse charges. 987 F.2d 475, 480 (8th Cir. 1993), abrogated on other grounds, United States v. Thomas, 20 F.3d 817, 823 (8th Cir. 1994) (en banc). We recognized in Norquay that district courts ordinarily should refrain from giving voluntary intoxication instructions in cases involving rape, a general intent crime. Id. (citing United States v. Lavallie, 666 F.2d 1217, 1219–20, 1222–23 (8th Cir. 1981)). But we noted that "[i]n cases involving general-intent crimes where considerable evidence has been introduced about the intoxicated state of a defendant . . . giving such an instruction, even over a defendant's objection, to make clear to the jury that voluntary intoxication is not a defense is not unfairly prejudicial." Id.

Because a considerable amount of evidence was introduced at trial about Medicine Horn's intoxicated state on the night he assaulted EFH, we hold that the

---

rebut evidence of specific intent where the crime charged is one requiring a specific intent to commit the crime. In this case, however, the crimes charged do not require specific intent. Therefore, no act committed by the defendant while in a state of voluntary intoxication, if you so find, shall be deemed less criminal by reason of his having been in such condition.

Instruction No. 20.

District Court did not abuse its discretion by giving the intoxication instruction.  Like the defendant's testimony in <u>Norquay</u>, Medicine Horn's "own testimony offered plentiful evidence of his intoxication on the night of the events in question."  <u>Id.</u> Medicine Horn admitted that he was drinking heavily during the party that preceded the assault.  He testified that when he arrived at the Wade residence he was "buzzed" and that in the four hours before the attack he consumed six to eight twelve-ounce cans of beer, six sixteen-ounce cans of beer, and shots from three different bottles of liquor.  Tr. at 287.  Given this evidence, the District Court did not abuse its discretion in giving the voluntary intoxication instruction.

IV.

For the reasons discussed, Medicine Horn's conviction is affirmed.

_____